**AIR HEATERS, INC., a Domestic Corporation, Plaintiff and Appellee,**

v.

**JOHNSON ELECTRIC, INC., of North Dakota, a Domestic Corporation, Defendant and Appellant.**

**Civ. No. 9350.**

Supreme Court of North Dakota.

Oct. 11, 1977.

Zuger & Bucklin, Bismarck, for plaintiff and appellee; argued by William P. Zuger, Bismarck.

McGee, Hankla, Backes & Wheeler, Minot, for defendant and appellant; argued by Richard H. McGee, Minot.

ERICKSTAD, Chief Justice.

This is an appeal by Johnson Electric, Inc., of North Dakota, defendant and appellant, from a judgment of the Williams County District Court dated February 7, 1977, in which that court awarded damages to Air Heaters, Inc., plaintiff and appellee, on the basis that Johnson Electric breached an implied warranty in the installation of an electrical system in a building owned by Air Heaters.

The issue in this case is whether there were any implied warranties covering the installation of the electrical system in the Air Heaters building, and, if so, whether an implied warranty was breached by Johnson Electric.

The facts in this case are for the most part not in dispute. Johnson Electric, Inc., of North Dakota, is a domestic corporation engaged in the business of electrical designs, construction, installation, and mainte-

nance, having its principal place of business at Tioga, North Dakota. Prior to November 2, 1972, Johnson Electric was known as Rodewald Electric, but was engaged in the same business. During 1969, Rodewald Electric contracted with Air Heaters, Inc., to design, manufacture, and install a complete electrical distribution system in a new addition to Air Heaters' plant at Tioga. Rodewald Electric, pursuant to this contract, designed, assembled, and installed the wiring, lighting, and electrical distribution system for the new addition during 1969. On October 3, 1972, at approximately 9:30 p. m., a fire destroyed a substantial part of Air Heaters' property, including parts of the electrical system in the new addition, parts of the addition itself, and other real and personal property of Air Heaters.

Air Heaters then sued Johnson Electric for negligence, breach of express warranty, breach of implied warranty for ordinary purposes, and of implied warranty for particular purposes, and strict liability in tort for its design, construction, installation, and maintenance of the electrical distribution system.

The case came to trial before a judge of the Fifth Judicial District court, Williams County, without a jury on October 26, 1976. During the trial, there was much dispute over the cause of the fire and the liability of Johnson Electric. (This will be discussed at greater length later in this opinion.) The district court, in its findings of fact, stated that Rodewald Electric impliedly warranted its work to be fit both for ordinary uses of such an electrical system and for each and every particular purpose communicated to it by Air Heaters. The court went on to state that the electrical system was not fit either for its ordinary purposes or for the particular purposes communicated by Air Heaters, and that such breach of implied warranty resulted in the fire. The court determined the damages to be $27,179.24 and concluded its findings of fact by stating:

"13. The Court having determined that the defendant breached an implied warranty of fitness and that said breach proximately resulted in the damages forming the basis of the complaint, the plaintiff's other three causes of action are moot."

Judgment was entered on February 7, 1977, in accord with these findings of fact, and it is from that judgment that Johnson Electric appeals to this court.

The first question in this case is whether the contract for the design and installation of the electrical system by Johnson Electric was covered by the implied warranties of the U.C.C. The implied warranty of merchantability is found in Section 41–02–31 (U.C.C. § 2–314), N.D.C.C., and the implied warranty for fitness for a particular purpose is found in Section 41–02–32 (U.C.C. § 2–315), N.D.C.C.

However, before these warranties can be applied to the facts of this case, it is necessary to determine if the contract between Johnson Electric and Air Heaters comes under the provisions of Article 2 of the Uniform Commercial Code at all. Section 41–02–02 (U.C.C. § 2–102) of the North Dakota Century Code, gives the scope of the coverage of Article 2 of the Uniform Commercial Code. That section states:

"Unless the context otherwise requires, this chapter applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this chapter impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers." § 41–02–02 (U.C.C. § 2–102), N.D.C.C.

The word "goods" as used in Article 2 of the Uniform Commercial Code is defined in Section 41–02–05 (U.C.C. § 2–105), N.D.C.C. That section states:

"1. 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 41–08) and things in action. 'Goods' also includes the unborn young of animals and growing

crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 41–02–07)." § 41–02–05(1) (U.C.C. § 2–105(1)), N.D.C.C.

The question then becomes, does the contract in question here deal with "goods" so as to come under the provisions of Article 2 of the Uniform Commercial Code, or does it deal with services which are outside the scope of Article 2. The courts throughout the United States have been troubled by this "goods" versus "service" distinction set out in Article 2. In some cases, the contract deals solely with "goods" and is clearly covered by Article 2. In other cases, the contract deals solely with "services" and is clearly outside the scope of Article 2. However, there are a great number of contracts which involve both the sale of "goods" and a rendition of "services". It is in this latter category that the contract in this case must be placed. The contract involves the sale of "goods" in that wires, fuses, conduits, etc., were furnished by Johnson Electric to Air Heaters. The contract involves a rendition of "services" in that these goods had to be installed in the proper fashion.

This precise question, the applicability of Article 2 of the Uniform Commercial Code, to mixed "goods" and "service" contracts, has not been before this court before. We think that this area of the law can best be resolved in North Dakota by adopting the test applied in *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974).

*Bonebrake* involved a contract dealing with the sale and installation of bowling equipment. One of the issues before that court was whether or not the contract came under Article 2 of the Uniform Commercial Code. *Bonebrake* enunciated the following test to be applied in mixed goods and service contracts.

"The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e. g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e. g., installation of a water heater in a bathroom)." 499 F.2d at 960.

This test has been adopted or applied by several courts recently. *See Pittsburgh-Des Moines Steel v. Brookhaven Manor Water Co.*, 532 F.2d 572 (7th Cir. 1976); *Ranger Const. Co. v. Dixie Floor Co., Inc.*, 433 F.Supp. 442 (D.S.C.1977); *Meyers v. Henderson Construction Co.*, 147 N.J.Super. 77, 370 A.2d 547 (1977); *Burton v. Artery Company, Inc.*, 279 Md. 94, 367 A.2d 935 (1977).

With the adoption of the *Bonebrake* test, it becomes necessary in mixed goods and service contracts, to determine whether their predominant factor, their thrust, their purpose reasonably stated is the rendition of service, with goods incidentally involved, or is a transaction of sale, with labor incidentally involved. In this case we are not able to determine from the record whether the predominant factor and thrust of this contract is the rendition of services, or a transaction of sale. The record does not include enough factual data concerning this particular contract for us to make that determination.

There have been cases in other jurisdictions in which it has been held that contracts for the installation of electrical systems are not contracts for goods, but are contracts for the rendition of services, and therefore are outside the scope of Article 2 of the Uniform Commercial Code. In *Mainland v. Alfred Brown Company*, 85 Nev. 654, 461 P.2d 862 (1969), the supreme court of Nevada held that the subcontract for furnishing and installing all electrical work for a building was a subcontract for labor and materials and not a contract for sale. A similar holding was given by the appellate court of Illinois in *J & R Elec. Div., J. O. Mory Stores v. Skoog Const. Co.*, 38 Ill.App.3d 747, 348 N.E.2d 474 (1976). In that case the court held that a subcontract for electrical work on a building project, including subcontractor's obligation of furnishing exterior unit switch gear, was not a contract for sale as set forth in Article 2 on

Sales, of the Uniform Commercial Code. It should be noted that those decisions did not consider the *Bonebrake* test.

With the adoption of the *Bonebrake* test, it is necessary to look at each particular contract to determine the predominant factor or thrust of that contract. Applying that test, we could not hold that every contract involving installation of an electrical system is automatically outside the scope of Article 2, U.C.C.

■ Because Air Heaters has failed to meet its burden of showing that this contract involved a sale of goods so as to come under the provisions of Article 2 of the Uniform Commercial Code, the implied warranty of merchantability, Section 41–02–31 (U.C.C. § 2–314), N.D.C.C., and the implied warranty of fitness for a particular purpose, Section 41–02–32 (U.C.C. § 2–315), N.D.C.C., can not be applied in this case.

However, the fact that the implied warranties under the Uniform Commercial Code are not applicable in this case, does not necessarily mean that there are no implied warranties covering this particular contract. In *Dobler v. Malloy*, 214 N.W.2d 510 (N.D.1973), we adopted the holding of the Supreme Court of Minnesota in *Robertson Lumber Co. v. Stephen Farmers Cooperative Elevator Co.*, 274 Minn. 17, 143 N.W.2d 622 (1966), that the doctrine of implied warranty of fitness can apply to construction contracts. In *Dobler*, speaking through Justice Vogel, we said:

"Although the precise matter has not been before this court previously, we adopt the holding of the Supreme Court of Minnesota in *Robertson Lumber Co. v. Stephen Farmers Cooperative Elevator Co.*, 274 Minn. 17, 143 N.W.2d 622 (1966), that the doctrine of implied warranty of fitness for the purpose applies to construction contracts under circumstances where (1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; and the owner (2) has no particular expertise in the kind of work contemplated; (3) furnishes no plans, designs, specifications, details, or blueprints; and (4) tacitly or specifically indicates his reliance on the experience and skill of the contractor, after making known to him the specific purposes for which the building is intended." 214 N.W.2d at 516.

In *Dobler*, we upheld the judgment of the trial court by finding the contractor impliedly warranted the fitness of the building (a home), and that he breached the warranty.

The *Robertson* case in Minnesota on which this court relied in *Dobler* involved a contract for the construction of a grain storage facility by a lumber company. The Minnesota court stated that this contract was not governed by the Uniform Sales Act, the predecessor to the Uniform Commercial Code. Instead the court held that outside the sales act, there was an implied warranty of fitness for the intended purpose in construction contracts.

A similar case is *Markman v. Hoefer*, 252 Iowa 118, 106 N.W.2d 59 (1960), involving a construction contract of a building used for curing and storing onions. In that case, the Iowa court stated:

"In building and construction contracts, in the absence of an express agreement to the contrary, it is implied that the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose. [Citations omitted.]" 106 N.W.2d at 62.

A case even more in point is the *Ins. Co. of No. Am. v. Radiant Elec. Co.*, 55 Mich. App. 410, 222 N.W.2d 323 (1974). That case involved a contract to install the electrical wiring in an apartment building. After the installation a fire occurred, and the installer, Radiant Electric Company, was sued. The Michigan court, in holding Radiant Electric Company liable for the damages, stated that implied warranties apart from statute applied in this case with respect to the manner in which the goods were installed.

Having already decided that there is a doctrine of implied warranty of fitness outside of the U.C.C. in North Dakota in some

construction contracts, it is necessary to determine if that warranty applies to the contract in this case.

This case involved the design and installation of an electrical system in a new addition at Air Heaters' plant. This installation of an electrical system is a part of the construction process, and therefore the warranty of fitness for the intended purpose discussed in *Dobler* should apply to this case providing the four conditions set out in *Dobler* are met. These four conditions are that (1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; (2) the owner has no particular expertise in the kind of work contemplated; (3) the owner furnishes no plans, designs, specifications, details, or blueprints; (4) the owner tacitly or specifically indicates his reliance on the experience and skill of the contractor, after making known to him the specific purposes for which the building is intended.

There is ample evidence in the record to support a finding that all four conditions have been met in this case.

The trial court determined that an implied warranty of fitness was present in this case and that determination is a finding of fact. Applying Rule 52(a), N.D.R. Civ.P., we do not find that this finding of fact is clearly erroneous.

Having found that an implied warranty of fitness does exist in this case, we must next determine whether or not this implied warranty was breached.

The district court stated in paragraphs 9 and 10 of its findings of fact:

"9. The electrical system was not fit either for its ordinary purposes or for the particular purposes communicated by Air Heaters, Inc. and such breach of implied warranty resulted in the fire.

"10. Specifically, the electrical system failed due to a failure of the insulation of a number 6 wire, which failure caused arcing to occur, causing damage to the conduit in which said wire was placed, causing such conduit to melt and to ignite certain combustible materials beneath it, thereby proximately resulting in the damages."

The determination by the trial court as to whether or not a breach of implied warranty has occurred is a question of fact. *Hoffman Motors, Inc. v. Enockson*, 240 N.W.2d 353 (N.D.1976). Therefore, this finding of fact by the trial court that there was a breach of an implied warranty in this case, will be upheld by this court unless we find it to be clearly erroneous under Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous when although there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. The mere fact that we might have viewed the facts differently if we had been the initial trier of the case, does not entitle us to reverse the lower court. *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973).

Johnson Electric, in its brief, contends that there was not a breach of an implied warranty. First of all, it contends that the cause of the fire was not proved and that the trial court's finding as to the cause of the fire is speculative and conjectural. To determine whether the trial court's finding of fact as to the cause of the fire is clearly erroneous, it is necessary to look at the evidence in this case.

Air Heaters relied on the testimony of two people to show the cause of the fire. The most important of these two witnesses was Dr. Ordean Anderson who holds a Ph.D. degree in electrical engineering from the University of Wisconsin. He testified that he had investigated the origin of between two hundred and three hundred fires. It was his opinion that the fire was caused by the arcing in conduit "H", and that the arcing resulted from a defective wire and the use of too large a fuse to protect that wire. He considered other possible origins of the fire, but ruled them out.

The second witness for Air Heaters as to the cause of the fire was Mr. R. E. Radspinner, the North Dakota State Fire Marshal. Mr. Radspinner testified that in his opinion the fire was caused by an electrical breakdown or malfunction.

Johnson Electric questioned the opinion of Dr. Anderson and Mr. Radspinner, especially due to the fact that some reconstruction had occurred before either Dr. Anderson or Mr. Radspinner inspected the site of the fire. Johnson Electric also called its own witnesses to point out other possible sources of the fire. These witnesses testified that they could not determine if one possible cause of the fire was more likely than another.

In support of its contention that the cause of the fire was not proved, Johnson Electric, in its brief, cites the case *Bismarck Baptist Church v. Wiedemann Indus., Inc.*, 201 N.W.2d 434 (N.D.1972). That case involved an action by the Church against the manufacturer of the baptistry, the manufacturer of the electrical controls, and the general and electrical contractors to recover damages caused by a fire. The trial court found that the plaintiff had failed to sustain its burden of proof to establish the cause of the fire. All the plaintiffs had proved was that a fire had occurred and that its property had been damaged. The trial court stated that the fire marshal and fire chief were merely speculating on what might have caused the fire and that such speculation was not a proper basis for a judgment against any of these defendants.

However, this case can be distinguished from *Bismarck Baptist Church v. Wiedemann Industries, Inc., supra*. In that case, it was the trial court which held the plaintiffs had not met the burden of proof as to the cause of the fire. Here the trial court found that the plaintiff had met his burden of proof. Secondly, in the *Bismarck Baptist Church* case, we stated, in upholding the trial court, that the plaintiffs did not prove any defect in the electrical system, nor did they prove that a defect was the cause of the fire. We also pointed out that the allegedly defective switch that was alleged to be the cause of the fire worked perfectly after the fire. In this case, there was an expert witness, Dr. Anderson, who pointed to a specific defect in the electrical system, to wit: a defective wire and the use of too large a fuse to protect that wire.

■ We believe that the trial court had sufficient evidence before it from which it could find that the fire was caused by a defect in the electrical system. There was sufficient evidence, although there was conflicting evidence. We do not find that the trial court's finding of fact as to the cause of the fire was clearly erroneous.

In its brief, Johnson Electric argues that the lapse of time, nearly three years from installation to the date of the fire, should at least raise an inference that the electrical system was fit for its intended use. In support of that position, they cite *Rogers v. W. T. Grant Company*, 132 Vt. 485, 321 A.2d 54 (1974). That case involved an action by a purchaser of an electric blanket against the seller for damages caused by a fire allegedly caused by a breach of an implied warranty. The trial court, in that case, stated that "the normal use of the blanket over the two years prior to the fire raises an inference that the blanket was fit for the intended use." The supreme court of Vermont affirmed the judgment of the trial court that there was not a breach of an implied warranty in that case.

■ We agree with the trial court of Vermont that an extended use of a product with no problems may raise an inference that there was no defect present at the time the item was purchased. But that inference is not conclusive and can be overcome by proof of a latent defect existing at the time of purchase or installation which with use, ultimately is disclosed.

In this case, there was evidence from which the trial court could determine that this inference of fitness had been overcome by Air Heaters. The specific testimony the court could have relied on is the testimony of Dr. Anderson, found on pages 247–249 of the trial transcript.

"Q Now, have you formed an opinion to a reasonable degree of engineering certainty as to how this arcing would be caused?

"A Yes.

"Q Okay. Could you explain that to the Court.

"A Voltage being constantly present and constantly stressing insulation, eventually will deteriorate any insulation. And it picks on the weakest point. . . .

\* \* \* \* \* \*

"Q BY MR. ZUGER: Now, this, of course, would have been constructed back in '69. The fire doesn't occur until October of 1972. Now, why would it not occur immediately after installation?

"A This again, like I said, voltage is constantly there and it is present. And almost all electrical failures are very much unpredictable in that sense. The right conditions may include just an increase in voltage of a few percent or it simply may be that the process—there is always current flow through insulation on a wire. And it is small, and it may have been milliamperes of current at the initial stage. And then it just built up to the point where it was amperes and then hundreds of amperes at the time of the initial arcing.

"Q Would you normally expect that this insulation would break down in a period of three years?

"A No.

"Q What would be the cause of such a defect?

"A Either the absence of or some sort of a conducting path established through wire. Often this occurs if you scrape or cut into a wire. A fragment of wire will come out and be exposed. Or it is the insulation could be scraped off at the time of installation, most of it.

"And when you run this conduit—run the wire through the conduit, it can sit there for a long time and not be significant."

Johnson Electric also contends that the installation was inspected and certified as meeting the requirements of the National Electrical Code, and that therefore there could be no breach of an implied warranty. There is much testimony on this point in the record. However, there is a dispute as to whether this Code was met by Johnson Electric in this case.

The controversy over the compliance with the Code basically concerns the size of the fuse used to protect the wires in conduit "H". The evidence in the record shows that a 200 ampere fuse was used. Air Heaters claims that this does not comply with the National Electrical Code and Johnson Electric claims that this does comply with the Code. The importance of this point is that there was testimony that this fire would not have occurred if a smaller fuse had been used. Dr. Anderson testified that the use of a 200 ampere fuse to protect these wires was an unsafe engineering practice regardless of the Code provisions. He stated that a smaller fuse would have prevented the extensive arcing from occurring in conduit "H" and would have prevented the fire.

■ The trial court did not state in its findings of fact whether or not it found the electrical installation to be in compliance with the National Electrical Code. The court did find, though, that implied warranty fitness had been breached by Johnson Electric. We think that, from the record, there was sufficient evidence for the trial court to find that the electrical installation was unfit for its purpose. The trial court could have determined that, even if the installation met the standards of the National Electrical Code, it was still unfit for its purpose in this case. We do not believe on appeal that it is necessary to determine whether or not the fuse used met the standard of the National Electrical Code. We are only to determine if the trial court's findings of fact are clearly erroneous. In this case, we do not have a definite and firm conviction that a mistake has been made by the trial court in its finding that a breach of an implied warranty of fitness did occur.

We conclude, then, that the trial court's findings of fact: that an implied warranty of fitness covered the contract; that the implied warranty was breached; and that the breach caused the fire, were not clearly erroneous.

Therefore, the judgment of the district court is affirmed.

VOGEL, PAULSON, PEDERSON and SAND, JJ., concur.