**NORTHWESTERN EQUIPMENT, INC., Plaintiff and Appellant,**

v.

**Clayton CUDMORE, individually, and d/b/a Cudmore Gravel Supply, Defendant and Appellee.**

**Civ. No. 9981.**

Supreme Court of North Dakota.

Nov. 12, 1981.

---

Richie, Sogard & Carlson, Fargo, for plaintiff and appellant; argued by Jay D. Carlson, Fargo.

Albert Frederick Arnason, Grand Forks, for defendant and appellee.

PAULSON, Justice.

Northwestern Equipment ["Northwestern"] appeals from the judgment of the district court of Walsh County entered on March 19, 1981, which dismissed Northwestern's cause of action against Clayton Cudmore and awarded damages of $3,641.23 to Cudmore on a counterclaim. We reverse.

Clayton Cudmore owns and operates Cudmore Gravel Supply in Park River, North Dakota. In early June of 1978, Dean Cudmore, son of Clayton Cudmore and an employee of Cudmore Gravel Supply, telephoned Northwestern regarding problems he was having with an International TD–25B bulldozer owned by the company. After describing the problem, Dean Cudmore was advised by Northwestern to remove the transmission from the bulldozer and to send it to Northwestern's repair shop in Fargo. The transmission was brought to Fargo and Northwestern repaired it. The transmission was then returned to Cudmore Gravel, and Dean Cudmore reinstalled it in the bulldozer. When the bulldozer still failed to work, Dean Cudmore again telephoned Northwestern, and was directed to send the torque converter from the bulldozer to Fargo for repairs. The torque converter was transported to Fargo and Northwestern repaired it. The torque converter was returned to Cudmore Gravel Supply, and Dean Cudmore re-installed it.

When the bulldozer still failed to function, Dean Cudmore again telephoned Northwestern. Lloyd Durbin, a field service mechanic for Northwestern, was dispatched to Cudmore Gravel Supply. He examined the bulldozer and determined that the problem was due to a faulty hydraulic control box. He removed the control box and returned to Northwestern's Fargo shop to rebuild it. Approximately one week later, he returned to Cudmore Gravel Supply and installed the rebuilt control box. Upon completing the repairs, Durbin operated the bulldozer for approximately one hour. At trial, he testified that the bulldozer was fully operational at that time and that the transmission and torque converter were operating within the manufacturer's recommended specifications.

The bulldozer subsequently developed further problems, and the evidence indicates that the machine failed to operate at full capacity. When Clayton Cudmore dis-

continued payments on his account with Northwestern, Northwestern brought this action to collect the balance due for the repairs, $1,247.77. Cudmore counterclaimed for the amounts he had already paid on the repairs and for expenses incurred in renting substitute equipment, alleging that Northwestern had been negligent in repairing the bulldozer and had breached an implied warranty of fitness for a particular purpose. The action was tried to the court without a jury, and the district court entered judgment for Cudmore on his counterclaim in the amount of $3,641.23, concluding that Northwestern had been negligent in repairing the bulldozer and had breached the implied warranty of fitness for a particular purpose contained in Section 41–02–32 of the North Dakota Century Code.

Northwestern has presented three issues which will be dispositive of this case on appeal.

I. Is the implied warranty of fitness for particular purpose provided for in Section 41–02–32, NDCC, applicable in the instant case?

II. Is the non-sale of goods implied warranty of fitness for particular purpose, which this court has applied to construction contracts, applicable to a contract for the repair of used equipment?

III. Were the trial court's findings that Northwestern had been negligent in making repairs and had breached an implied warranty of fitness for particular purpose clearly erroneous?

## I.

The first question presented is whether or not the implied warranty of fitness for particular purpose contained in Section 41–02–32, NDCC (UCC § 2–315), applies to a contract for the replacement of parts and repair of a transmission in a used bulldozer.[1] However, before this warranty can be applied to the facts of this case, we must determine if the contract between Northwestern and Cudmore Gravel Supply falls within the coverage of Chapter 41–02 of the North Dakota Century Code (Article 2 of the Uniform Commercial Code).

Section 41–02–02 (UCC § 2–102) provides that "this chapter applies to transactions in goods." The contract between Northwestern and Cudmore Gravel Supply was for the rendition of services and for the sale of necessary parts. Thus, the contract is a "mixed" contract, for both goods and services. The applicability of Chapter 41–02, NDCC, to mixed goods and services contracts was discussed by this court in *Air Heaters, Inc. v. Johnson Electric, Inc.*, 258 N.W.2d 649 (N.D.1977). In *Air Heaters*, we adopted the test espoused by the United States Court of Appeals for the Eighth Circuit in *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974). The *Bonebrake* court enunciated the following test to be applied to mixed goods and services contracts:

"The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e. g.*, contract with artist for painting . . .) or is a transaction of sale, with labor incidentally involved (*e. g.*, installation of a water heater in a bathroom . . .)." *Bonebrake, supra*, 499 F.2d at 960. [Footnotes omitted.]

As we noted in *Air Heaters*, with the adoption of the *Bonebrake* test it becomes necessary in cases involving mixed goods and services contracts to determine "whether their predominant factor, their thrust, their purpose reasonably stated is the rendition of service, with goods incidentally involved, or is a transaction of sale, with labor incidentally involved." *Air Heaters, supra*, 258 N.W.2d at 652. Thus, in the instant case we must determine whether the predominant factor, thrust, and purpose of the contract between Northwestern and

1. It should be noted that Cudmore Gravel Supply did not purchase the bulldozer from Northwestern. The bulldozer, a 1969 International TD–25B, was purchased used from Foster County in 1975. Thus, the warranty at issue here arises from the repair work and replacement of parts, not from the sale of the bulldozer itself.

Cudmore Gravel Supply was the rendition of services, with goods incidentally involved, or was a transaction of sale, with labor incidentally involved.

On two previous occasions we have confronted the issue of the applicability of Chapter 41–02, NDCC, to mixed goods and services contracts. In *Air Heaters*, the plaintiff had contracted with the defendant to design, manufacture, and install a complete electrical system in a new addition to the plaintiff's plant. Three years after the work had been completed, a fire destroyed a substantial part of the plaintiff's property, and plaintiff sued for negligence, breach of warranty, and strict liability in tort. On appeal, this court concluded that there was insufficient factual data in the record regarding the nature of the contract to determine whether the primary factor and thrust of the contract was the sale of goods or the rendition of services. Thus, we concluded that the plaintiff had failed to meet its burden of establishing that the contract involved a sale of goods so as to come under the provisions of Chapter 41–02, NDCC, and we held that the implied warranties contained in Chapter 41–02 were inapplicable.

More recently, in *Robertson Companies, Inc. v. Kenner*, 311 N.W.2d 194 (N.D.1981), we again applied the *Bonebrake* test to a mixed goods and services contract. In *Robertson*, the contract involved the sale of two galvanized steel buildings. The contract required the plaintiff to "provide, deliver, and erect" the two buildings. We held that the main purpose of the contract was clearly the sale of grain storage facilities, and therefore Chapter 41–02, NDCC, was applicable.

In the instant case, Cudmore contends that the primary purpose and thrust of the contract was the sale of the parts, because the amount charged by Northwestern for the necessary parts was greater than the amount charged for labor.[2] Although the amount charged for goods and services, respectively, may be a factor to be considered in determining the predominant thrust and purpose of the contract, it is not by itself a clear indication of what the parties considered the predominant purpose. The *Bonebrake* test looks to the predominant purpose or thrust of the contract *as it would exist in the minds of reasonable parties. Meyers v. Henderson Construction Co.*, 147 N.J.Super. 77, 370 A.2d 547, 550 (1977). In the instant case the parties have demonstrated their intent that the contract's primary purpose was the repair of the bulldozer, with the necessary parts merely incidental to the services performed. For example, Cudmore's answer and counterclaim to Northwestern's complaint clearly indicates that the primary concern of the parties was the repair work performed, not the parts supplied. In its counterclaim, Cudmore alleged that "Defendant delivered a certain transmission from a piece of Defendant's equipment *for the purpose of repairing it*"; "the *repair* of Defendant's transmission was in the exclusive judgment, control, and management of plaintiff's employees and Defendant was required to rely exclusively on the judgment of Plaintiff's employees"; "Plaintiff's employees were negligent in *repairing* said transmission." [Emphasis added.]

Additionally, during the cross-examination of Ernest Jensen, Northwestern's service manager, counsel for Cudmore elicited testimony that the contract was for repair of the transmission, with parts "as needed" as determined by Northwestern:

"Q [by Mr. Arnason]   Now, you have people in your shop that are mechanics properly trained in transmission work?

"A  Yes, we have them, yes.

"Q  I show you part of Plaintiff's Exhibit 1, and it looks like a repair order and is signed by Larry Dunn and countersigned by Dean Cudmore. Does that request Northwestern to disassemble the transmission and reassemble with parts needed or listed? Is that correct?

"THE COURT: Are you just reading the handwritten part?

---

2.  According to figures on Northwestern's invoices for the work performed, the total charge for parts and labor for the work performed on the bulldozer was $4,302.79. Of this figure, $3,155.29 was for parts and $1,147.50 was for labor.

"A  Yes, as listed.

"THE COURT: The exhibit speaks for itself, Mr. Arnason. What is the question?

"Q  I was just checking.

"THE COURT: Do you want to call his attention to that?

"Q  So, the determination of what parts were placed in the transmission was left to you as shop foreman or the mechanic who did the work? Cudmore didn't say, repair this—

"A  Not for every particular part.

"Q  Whatever was to be repaired, or the repair work was to be determined by Northwestern Equipment. Is that correct?

"A  Right. I think the list of parts is on the back.

"Q  It says, as needed. If one of your mechanics said a new valve was necessary or a pump, that gave them authority to put it in, and in working condition. That is what it says there.

"A  Yes."

It is clear from the foregoing that the contract was essentially for the rendition of services, with the sale of parts merely incidental thereto, even though the final charge for parts exceeded the amount charged for labor. The essence of the contract between the parties was the skill and judgment to be employed by Northwestern's employees in repairing the transmission, torque converter, and hydraulic control box.

As we noted in *Air Heaters, supra,* the party alleging breach of warranty has the burden of establishing that the predominant purpose and thrust of the contract is the sale of goods. Because Cudmore has failed to establish that the contract in the instant case was predominantly one for the sale of goods, we conclude that Chapter 41–02, NDCC (Article 2 of the UCC), is not applicable in the instant case, and the implied warranty of fitness for particular purpose contained in § 41–02–32 (UCC § 2–315) is unavailable to Cudmore.

II.

Cudmore also contends that, even if the implied warranties of the Uniform Commercial Code are inapplicable, as we have just held, the district court judgment may still be upheld on the basis of a non-sale of goods warranty of fitness for particular purpose. Cudmore contends that the implied warranty of fitness for particular purpose which we have previously applied outside of the Uniform Commercial Code to construction contracts should be extended to cover contracts for the repair of used equipment. In *Dobler v. Malloy,* 214 N.W.2d 510 (N.D.1973), this court held that an implied warranty of fitness for particular purpose arose under certain circumstances in construction contracts. In *Air Heaters, supra,* we held that this non-sale of goods implied warranty extended to a contract for the installation of an electrical system in an addition to a building, noting that installation of the electrical system was "a part of the construction process." *Air Heaters, supra,* 258 N.W.2d at 654. We have not previously extended the coverage of this non-sale of goods warranty to a contract which is not involved with the "construction process."[3] However, we find it unnecessary to decide this issue, because we find that, even if the warranty were extended to cover the contract between Northwestern and Cudmore, there is insufficient evidence to support the district court's findings that the warranty had been breached and that such breach was the proximate cause of Cudmore's damages. Therefore, we will assume *arguendo* that the implied warranty of fitness for particular purpose applies to the contract in the instant case for the purpose of discussing the remaining issue, sufficiency of the evidence to support the trial court's findings of fact.

III.

Northwestern contends that the district court's findings that Northwestern had

3.  For a discussion of *Air Heaters* and the extension of the non-sale of goods implied warranty of fitness for particular purpose to non-construction contracts, *see* Lord, *Some Thoughts About Warranty Law: Express and Implied Warranties,* 56 N.D.L.Rev. 509, 625–26 (1980).

breached an implied warranty of fitness for particular purpose and had been negligent in performing the repairs to the transmission are clearly erroneous. We agree.

A trial court's determination as to whether or not a breach of warranty has occurred is a question of fact. *Hoffman Motors, Inc. v. Enockson*, 240 N.W.2d 353, 355–56 (N.D.1976). Similarly, the existence of negligence is a question of fact. *McKechnie v. O'Neil*, 252 N.W.2d 875, 877 (N.D.1977). The trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P. We have previously noted that a finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Kasper v. Provident Life Insurance Co.*, 285 N.W.2d 548, 551 (N.D.1979); *Bladow v. Bladow*, 249 N.W.2d 917, 920 (N.D.1977); *Eakman v. Robb*, 237 N.W.2d 423, 429 (N.D. 1975).

In its findings of fact, the trial court stated:

"I.

"That the Plaintiff has proved a prima facie case; that the work was completed on the unit in question, namely, on the transmission and the torque converter.

"II.

"The Court does find, by preponderance of the evidence, that the unit did not operate properly after such repair work had been done by Plaintiff and that such lack of proper operation was proximately caused by the failure to properly repair the transmission and torque converter."

Based on these findings, the court concluded that Northwestern had breached the implied warranty of fitness for particular purpose and had been negligent as a matter of law.

We have previously held that in a negligence action the plaintiff has the burden of proving by a preponderance of the evidence that the defendant was responsible for some negligent act or omission which was the proximate cause of the plaintiff's damages. *Bismarck Baptist Church v. Wiedemann Industries, Inc.*, 201 N.W.2d 434, 440 (N.D.1972). It is well settled that specific negligent acts and causation must be affirmatively proved, and will not be presumed merely from the occurrence of the accident or damages. *Anderson v. Kroh*, 301 N.W.2d 359, 362 (N.D.1980); *Foerster v. Fischbach-Moore, Inc.*, 178 N.W.2d 258, 262 (N.D.1970). Similarly, a party alleging breach of warranty has the burden of proving by a preponderance of the evidence that the warranty was breached and that such breach proximately caused the damages alleged. *See Chisholm v. J. R. Simplot Co.*, 94 Idaho 628, 632, 495 P.2d 1113, 1117 (1972); *Davies v. Goodyear Tire and Rubber Co.*, 91 Mich.App. 347, 282 N.W.2d 172, 174 (1978); *Nelson v. Wilkins Dodge, Inc.*, 256 N.W.2d 472, 475 (Minn. 1977).

The trial court in the instant case found as a fact that the bulldozer did not operate properly after Northwestern had repaired it, and that its failure to function properly was "proximately caused by the failure to properly repair the transmission and torque converter." Based on this finding, the court concluded that Northwestern had breached an implied warranty of fitness for particular purpose and had been negligent as a matter of law. After a careful examination of the record, however, we find no evidence to support the trial court's finding that the malfunctioning of the bulldozer was caused by improper repairs by Northwestern.

The trial court's finding that Northwestern had improperly repaired the bulldozer and that such improper repairs had proximately caused the subsequent breakdowns was based on the testimony of Cudmore employees who had operated the machine after the repairs had been completed. However, this testimony establishes nothing more than that the bulldozer was repaired by Northwestern and that sometime later it

failed to perform at full capacity. Eldon Thompson, who operated the machine during the summer of 1978, testified that it was "hesitating" and "seemed to lose power," and that he thought "the transmission was slipping or something was connected wrong in the transmission or the torque converter." Harry Linstad, who operated the machine in 1979, testified that the machine would run for a few hours each day and then would quit. Arnie Meberg, who operated the machine in 1980, testified that the machine would run properly for a time, and would then slow down and eventually stop. Dean Cudmore testified that, after the repairs had been completed, the operators had told him of difficulties with the machine and that he had informed Northwestern that "the transmission wasn't firing something right." Tom Cudmore, superintendent for Cudmore Gravel Supply, testified that the machine "hesitated." However, upon examination by the court, Tom Cudmore testified that he did not know if the problems with the machine were caused by improper repair of the transmission and torque converter.

The foregoing is the only evidence presented at trial regarding the malfunctioning of the bulldozer. There was no evidence presented regarding specific negligent acts by Northwestern in performing the repairs. Furthermore, there was no expert testimony presented regarding the cause of the problems with the bulldozer, nor were any defective parts introduced to establish the nature of the malfunction. The evidence presented at trial merely shows that Northwestern performed repairs on the transmission, torque converter, and hydraulic control box, and sometime later the bulldozer failed to function properly. Cudmore failed to present any evidence which would establish a causal connection between the malfunctioning of the machine and the repairs effected by Northwestern. In fact, at oral argument counsel for Cudmore conceded that it had never been determined what specifically was causing the power loss problem with the bulldozer. Absent proof of what specific parts of the machine were causing the malfunction, the trial court's finding that the malfunction was proximately caused by improper repairs by Northwestern was merely speculative and is unsupported by the evidence.

In *Bismarck Baptist Church v. Wiedemann Industries, Inc.*, 201 N.W.2d 434, 441 (N.D.1972), we noted:

"In other words, if from the plaintiff's evidence it is as probable that the injury and damage of which the plaintiff complains resulted from a cause for which the defendant is not responsible as it is that such injury and damage resulted from a cause for which the defendant would be responsible, a prima-facie case of proximate cause has not been made and the plaintiff cannot recover, *since plaintiff's recovery must be based upon more than mere speculation.*" [Emphasis added.]

In the instant case, it appears that there are several possible causes for the damage to the bulldozer besides the alleged improper repairs by Northwestern. The transmission and torque converter were re-installed by Dean Cudmore. He testified that he received no directions regarding installation of the transmission and torque converter, and merely "put it back in the same way [he] took it out." He also testified that he disconnected the linkage when removing the transmission and reconnected it when re-installing the transmission. It is therefore possible that the difficulties with the bulldozer resulted from improper installation of the transmission and torque converter by Dean Cudmore after they were repaired by Northwestern, rather than from "failure to properly repair the transmission and torque converter" by Northwestern. Furthermore, there is no evidence in the record which precludes the possibility that the malfunctioning of the bulldozer was caused by defects unrelated to the transmission and torque converter. Tom Cudmore testified that the bulldozer had had continual mechanical difficulties from the time Cudmore Gravel Supply purchased it from Foster County in 1975, and that a headbolt had been replaced and a rebuilt motor had been installed prior to any difficulty with

the transmission and torque converter. In Tom Cudmore's opinion, the bulldozer was a "lemon," and he testified that he had knowledge of seven other people who had experienced similar problems with identical machines. This testimony raises the possibility that the malfunctioning of the bulldozer may have been caused by inherent defects in the machine itself, rather than by failure to properly repair the transmission and torque converter.

Cudmore has failed to present any evidence which tends to prove that the damages alleged in this case were caused by improper repair of the transmission, torque converter, and hydraulic control box by Northwestern, rather than by improper reinstallation of the transmission and torque converter by Dean Cudmore, inherent design defects, or some other factor. Therefore, the trial court's finding that the malfunctioning of the bulldozer had been proximately caused by Northwestern's failure to properly repair the transmission and torque converter is merely speculative, and is unsupported by the record. Upon an examination of the entire record, we are left with a firm and definite conviction that a mistake has been made, and we therefore hold that the trial court's findings that Northwestern had improperly repaired the transmission and torque converter, and that such improper repair proximately caused the damages alleged, were clearly erroneous. Because the district court's conclusions that Northwestern had been negligent as a matter of law and had breached a warranty of fitness for particular purpose were based upon clearly erroneous findings of fact, the judgment of the district court must be reversed.

Finally, we note that the district court found that Northwestern had completed the repair work on the bulldozer and had proven a prima facie case on its original claim. However, the district court held that Northwestern was not entitled to recover the balance due on the account, $1,247.77, because it had been negligent and had breached an implied warranty of fitness for particular purpose. Because we reverse the judgment and conclude that Cudmore failed to meet his burden of proof on the negligence and warranty issues, Northwestern is now entitled to recover the balance due on the account from Cudmore. We therefore reverse and remand to the district court for entry of judgment consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.