**FARMERS ELEVATOR & MERCANTILE COMPANY, a North Dakota corporation, Plaintiff and Appellee,**

v.

**FARM BUILDERS, INC., a North Dakota corporation, Defendant and Appellant.**

**Civ. No. 870390.**

Supreme Court of North Dakota.

Dec. 6, 1988.

---

Sproul, Lenaburg, Fitzner & Walker, Valley City, for plaintiff and appellee; argued by David E. Walker.

Weiss, Wright & Paulson, Jamestown, for defendant and appellant; argued by Terence J. Paulson.

MESCHKE, Justice.

Farm Builders, Inc. [Builders] appealed from two "non-cumulative" judgments, and corresponding orders denying its post-trial motions, which awarded Farmers Elevator & Mercantile Co. [Elevator] damages upon separate theories of contract and of tort for injury to Elevator's property. We affirm.

Builders contracted to improve Elevator's grain storage and handling facilities. Along with other work, Builders agreed to raise an existing grain leg, also known as a bucket elevator, from a height of 80 feet to 90 feet by installing a 10–foot riser section. By July 18, 1983, most of the preparatory work for raising the grain leg was completed. At the end of that day Builders removed the existing spouting, which was a substantial means of vertical support for the leg. Builders took no steps to temporarily brace the leg. On the morning of July 19, Builders' crew positioned a crane to lift the grain leg and then took a lunch break. While the crew was on break, a storm occurred with wind velocities between 50 and 70 miles per hour. The grain leg collapsed, damaging Elevator's adjoining grain bins.

Elevator sued Builders for negligence and breach of contract. Elevator alleged that the "damage caused by the collapse of the grain leg was directly and proximately caused by defendant's negligent failure to provide support for the grain leg," and that "under the contract ..., defendant [agreed] ... to protect existing features and structures and to be solely responsible for the protection and restoration of all features on or about the building site." Elevator sought damages for repair and replacement of its property, for injuries to stored grain, and for loss of profits from its inability to operate during repairs. Elevator requested a jury trial.

Builders answered that Elevator's damages resulted from an act of God and that Elevator was contributorily negligent. Builders alleged that Elevator contracted to carry property insurance for the work and that Elevator had contractually waived its right to seek damages from Builders.

Before trial, the trial court granted Elevator's motion to strike Builders' contributory negligence defense. The court declined to rule on the parties' motions for summary judgment on the contract claim, ruling that Elevator's tort claim would be submitted to a jury and that the contract claim would be decided by the court later.

After trial, the jury returned a special verdict rejecting the act of God defense, finding that Builders was negligent, and finding that Builders' negligence caused Elevator's damages. The jury awarded Elevator $51,750 for property loss, $18,000 for lost profits, and interest. Judgment was entered for $92,697.13. Builders then moved for judgment notwithstanding the verdict and alternatively for a new trial. The trial court heard Builders' post-trial motion and Elevator's contract claim together.[1]

The trial court denied Builders' pending motion and ruled that Builders had breached the contract. The court determined that Builders was "contractually obligated to provide alternative support or temporary bracing for the subject grain leg, and that [Builders] was contractually obligated to protect and safeguard all features of the worksite." The court also determined that Builders was contractually responsible for carrying property insurance on the work and that the waiver of rights provision in the contract did not apply. The court awarded Elevator $18,000 for "loss of net income," $66,187.71 for "loss to physical property," and interest, finding that "all damages to property and business were proved with reasonable certainty to the satisfaction of the Court." Judgment was

1. The record does not show what took place at the hearing. Elevator's counsel said the trial court "gave both parties the opportunity to supplement the evidence adduced at the tort trial, but neither party offered any additional witnesses or exhibits."

entered for $111,203.28.[2] This judgment further provided that Elevator "is entitled to separate judgments upon its separate causes of action, provided that [Elevator] shall not have double recovery thereunder but must elect between said judgments after they have become final judgments." Builders then moved to set aside the contract judgment. The motion was denied. Builders appealed from both the tort and contract judgments and from the corresponding post-trial orders.

Builders argued that, for numerous reasons, neither judgment can be sustained. We deem resolution of the issues about the contract judgment dispositive in this case.

## CONTRACT

■ The construction of a written contract to determine its legal effect, as well as the determination whether a contract is ambiguous, are questions of law for the court to decide. *Sorlie v. Ness*, 323 N.W. 2d 841, 844 (N.D.1982). Builders asserted that the trial court misconstrued the insurance clauses of the construction contract in concluding that Builders was responsible for carrying property insurance on the work and that Elevator had not waived its right to bring this action.

■ Builders' argument was premised on three clauses of the construction contract. Paragraph 5.6 of the General Conditions stated:

*"Property Insurance:*

"5.6. Unless otherwise provided in the Supplementary Conditions, OWNER [Elevator] shall purchase and maintain property insurance upon the Work at the site to the full insurable value thereof (subject to such deductible amounts as may be provided in the Supplementary Conditions or required by law). This insurance shall include the interests of OWNER, CONTRACTOR [Builders] and Subcontractors in the Work, shall insure against the perils of fire and extended coverage and shall include 'all risk' insurance for physical loss and damage including theft, vandalism and malicious mischief, collapse and water damage, and such other perils as may be provided in the Supplementary Conditions, and shall include damages, losses and expenses arising out of or resulting from any insured loss or incurred in the repair or replacement of any insured property (including fees and charges of engineers, architects, attorneys and other professionals). If not covered under the 'all risk' insurance or otherwise provided in the Supplementary Conditions, CONTRACTOR shall purchase and maintain similar property insurance on portions of the Work stored on and off the site or in transit when such portions of the Work are to be included in an Application for Payment...."

Section 3.2 of the Supplementary Conditions provided:

2. The difference between the amounts awarded in the tort and contract judgments was apparently attributable to the trial court's higher award for property loss. The only explanation for the difference appears in Elevator's post-trial brief on the contract action:

"In the 'tort half' of this action the jury awarded only $51,750 in property damages despite uncontradicted testimony that those damages were in fact $66,187.71. It is unknown exactly how the jury's figure was decided, although it appears in retrospect that Defendant's exhibit 1 may have erroneously affected the verdict in this regard. That Agreement between the parties for post-collapse repair work, spoke of an assignment by Farm Builders to Farmers Elevator of $30,809.56 in insurance proceeds. It is my belief that the jury was unsure from the testimony whether or not such insurance proceeds were in fact paid

over from defendant's insurer to plaintiff, and therefore split the figure.

"While the jury may have been unsure, the Court *is* aware, that no such proceeds were paid over and that there has been no payment of any kind in any amount made, which would serve to reduce the actual proven property damages of $66,187.71." [Emphasis in original.]

The trial court apparently accepted this argument.

Builders has not argued that the trial court erred in awarding an amount of damages higher than that awarded by the jury. Rather, Builders focused upon liability under the written construction contract and upon res judicata as foreclosing any judgment whatsoever on the contract claim. Accordingly, we express no opinion on the propriety of the disparity in the judgment amounts.

*"3.2. PROPERTY INSURANCE (FIRE, BUILDER'S RISK)*

"A. The Contractor shall purchase and maintain Property Insurance as called for in paragraph 5.6 of Article 5 of the General Conditions."

Paragraph 5.10 of the General Conditions further stated:

*"Waiver of Rights:*

"5.10. OWNER and CONTRACTOR waive all rights against each other and the Subcontractors and their agents and employees and against ENGINEER and separate contractors (if any) and their subcontractors' agents and employees, for damages caused by fire or other perils to the extent covered by insurance provided under paragraphs 5.6 and 5.7, inclusive, or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by OWNER as trustee...."

Builders asserted that paragraph 5.6 and section 3.2, construed together, required both Elevator and Builders to carry "property insurance upon the work," or "builder's risk" insurance, and if Elevator had obtained its required "builder's risk" insurance, this lawsuit would be barred by the paragraph 5.10 waiver-of-rights clause. In the alternative, Builders asserted that Elevator was required "to account for the insurance proceeds it did receive."[3]

■ We believe the trial court correctly construed the contract in concluding, as a matter of law, that Builders was solely responsible for obtaining "builder's risk" insurance and that the waiver-of-rights clause was inapplicable. Paragraph 5.6 of the General Conditions unambiguously stated that "[u]nless otherwise provided in the Supplementary Conditions, OWNER [Elevator] shall purchase and maintain property insurance upon the Work at the site...." Section 3.2 of the Supplementary Conditions, which is titled "PROPERTY INSURANCE (FIRE, BUILDER'S RISK)," stated that "[t]he Contractor [Builders] shall purchase and maintain Property Insurance as called for in paragraph 5.6 of Article 5 of the General Conditions." Builders' argument that paragraph 5.6 and section 3.2 required both Elevator and Builders to carry duplicative "builder's risk" insurance ignored the plain meaning of the language, "[u]nless otherwise provided in the Supplementary Conditions." Paragraph 5.6 of the General Conditions, in preprinted form, specifically recognized that the obligation to maintain "builder's risk" insurance could be shifted to Builders in the Supplementary Conditions. Section 3.2 of the Supplementary Conditions, which is typewritten, accomplished this by placing the obligation upon Builders. When a conflict exists between two parts of a contract, the typewritten part controls over the preprinted part. *Thiel Industries v. Western Fire Ins. Co.*, 289 N.W.2d 786, 788 (N.D. 1980); § 9–07–16, N.D.C.C. We conclude that section 3.2 of the Supplementary Conditions, when construed with the limiting language of paragraph 5.6 of the General Conditions, unambiguously placed the sole obligation to maintain "builder's risk" insurance upon Builders.

### WAIVER

We also agree with the trial court's conclusion that the waiver-of-rights clause had

---

**3.** Decision on this issue is impossible because the parties failed to develop a record on insurance coverage. According to the parties, both Builders and Elevator carried insurance policies. However, neither policy was part of this record.

According to Elevator, it had a "standard property and casualty policy," or the business equivalent of a "homeowner's" policy, upon its business operations. Elevator's policy apparently paid some insurance benefits after the incident, but Elevator informed us that its insurance carrier "may have been justified in refusing coverage" and, in any event, has subrogation rights against Elevator's recovery in this case. Elevator had no "builder's risk" policy.

Builders had what Elevator refers to as a "builder's risk" insurance policy which, it asserted, was the equivalent of "property insurance upon the Work at the site." Builders' insurance carrier has not paid or tendered benefits to either party, so far as this record shows.

no effect under these circumstances. The pertinent part of paragraph 5.10 of the General Conditions stated that "OWNER and CONTRACTOR waive all rights against each other ... for damages caused by fire or other perils to the extent covered by insurance provided under paragraphs 5.6 and 5.7, inclusive, or by any other property insurance applicable to the Work, ..." Elevator did not have and was not required by the contract to obtain "property insurance applicable to the Work," or "builder's risk" insurance. Rather, this was Builders' responsibility. Although Builders may have had this insurance, no evidence of that was submitted. Its insurance carrier has not tendered payment of losses to Elevator. Therefore, the waiver-of-rights clause in paragraph 5.10 was inapplicable to this claim.

### UNCONSCIONABILITY

 Builders asserted that the trial court erred in failing to determine that the contract was unconscionable and unenforceable under § 41–02–19 [U.C.C. § 2–302], N.D.C.C. This claim was not pleaded. It appeared for the first time in Builders' "rebuttal brief to post-trial brief of plaintiff on contract cause of action," apparently after having been argued orally during the hearing. Section 41–02–19(2) requires that the parties be afforded a reasonable opportunity to present evidence as to the contract's commercial setting, purpose, and effect to aid the court in making the determination of unconscionability. Builders offered no evidence at any time addressed to unconscionability. In view of Builders' belated attempt to raise the issue, we cannot say that the trial court erred in refusing to consider unconscionability. In any event, we are not persuaded that this construction contract was unconscionable as a matter of law.

### RES JUDICATA

 Builders also asserted that the trial court erred in refusing to set aside the

contract judgment on grounds of res judicata.[4]

Builders contended that once the trial court entered judgment on the jury verdict for the tort claim, the trial court was precluded under the doctrine of res judicata from entertaining the contract claim because it was based upon the same facts and circumstances. Builders' argument stems from comments by the trial judge during pre-trial discussions about the procedure for handling the tort and contract claims. Although the trial judge determined he would decide the contract issues as a matter of law, he stated that "I am not going to sever it, because I don't want to waste the time to try a separate lawsuit."

A claim "severed" under Rule 21, N.D.R. Civ.P., can become an entirely independent action with a separate judgment independently entered on it. On the other hand, claims tried separately under Rule 42(b), N.D.R.Civ.P., usually result in only one judgment. *See Mitzel v. Schatz*, 167 N.W. 2d 519, 522 (N.D.1968). Therefore, Builders asserted that the trial court's refusal to sever the claims precluded Elevator from recovering under the later of two judgments, the contract judgment. In effect, Builders argued that Elevator was stuck with its tort judgment.

We agree, as Builders asserted, that the trial court did not sever the claims pursuant to Rule 21, N.D.R.Civ.P., but, rather, essentially ordered separate trials of the claims pursuant to Rule 42(b), N.D.R.Civ.P. There was no motion for severance made to the trial court. We will not infer from this skimpy record that the trial court intended its action to effectively result in two distinct lawsuits.

Furthermore, Builders' argument, that use of the Rule 42(b) procedure barred entry of the contract judgment under principles of res judicata, was plainly flawed. A judgment, to be res judicata, must be

**4.** Builders also relied upon the doctrine of merger of judgment as an independent ground for setting the contract judgment aside. However, as applied to the circumstances here, we believe the doctrines of merger of judgment and res judicata are, for all intents and purposes, identical. *See* 46 Am.Jur.2d *Judgments* §§ 383 and 392 (1969).

final. *See Matter of Estate of Hoffas,* 422 N.W.2d 391, 395 (N.D.1988) ["Res judicata means ... a valid, existing final judgment...."]; 50 C.J.S. *Judgments* § 620 (1947). If a claim against a party is severed under Rule 21, a judgment entered in the severed action requires no Rule 54(b), N.D.R.Civ.P., order to make that judgment final and appealable. *Buurman v. Central Valley School Dist.,* 371 N.W.2d 146, 148 (N.D.1985). On the other hand, if a separate trial of a claim is ordered under Rule 42(b), a Rule 54(b) order expressly stating there is no just reason for delay in directing the entry of final judgment is necessary to make the judgment final and appealable. *Buurman v. Central Valley School Dist., supra.* Because no Rule 54(b) order accompanied this tort judgment, it was not final and was subject to revision at any time before the entry of judgment adjudicating all of the claims. *Williams Company v. Hamilton,* 427 N.W.2d 822, 824 (N.D.1988) (On Petition for Rehearing). Thus, because the tort judgment was not final, principles of res judicata did not preclude the trial court from adjudicating all claims and entering judgment on Elevator's contract claim.

### ELECTION OF REMEDIES

■ We also reject Builders' contention that entry of judgment on the tort claim amounted to an election of remedies which precluded the trial court's consideration of the contract claim. The doctrine of election of remedies is applied when three elements are present: 1) the existence of two or more remedies; 2) inconsistency between the remedies; and 3) the choice of one remedy. *Johnson v. Monsanto Co.,* 303 N.W.2d 86, 94 (N.D.1981). Missing here were the second and third elements. The remedies were not inconsistent because monetary damages were sought under both the contract and tort theories. Moreover, the third element was not established. Elevator did not make any real or decisive "choice" within the meaning of the doctrine. *See* 25 Am.Jur.2d *Election of Remedies* §§ 14 and 22 (1966). Elevator did not proceed on only one of the remedies it was pursuing; it obtained an interlocutory resolution of only one of its theories of recovery. Entry of the tort judgment did not, under these circumstances, amount to an election of remedies. *See Wallis v. Superior Court,* 160 Cal.App.3d 1109, 207 Cal.Rptr. 123, 126 (1984) [obtaining partial summary judgment on breach of contract action was not an election to pursue contract remedy alone so as to preclude pursuit of tort remedy].

■ Although two "judgments" were entered in this case, their practical effect was only one judgment finding Builders liable to Elevator under both legal theories. Predicating liability upon alternative theories of recovery is hardly a novel proposition in this jurisdiction. *Heitkamp v. Milbank Mut. Ins. Co.,* 383 N.W.2d 834 (N.D. 1986). It is allowable so long as a double recovery is not permitted. *Merrill Iron & Steel v. Minn–Dak Seeds, Ltd.,* 334 N.W.2d 652, 656 (N.D.1983). This contract judgment specifically protected against a double recovery by providing that Elevator "shall not have double recovery ... but must elect between said judgments after they have become final judgments." The election requirement will effectively eliminate whichever judgment Elevator chooses to forego. The trial court did not abuse its discretion in postponing election of remedies until the judgment was final.

### CONCLUSION

For the reasons stated in the opinion, we affirm the contract judgment. Because we affirm the larger of "non-cumulative" judgments, the one based upon Builders' contractual liability, we deem it unnecessary to decide the issues raised about the tort judgment. *See Heitkamp v. Milbank Mut. Ins. Co., supra,* 383 N.W.2d at 837.

AFFIRMED.