**HARLEY MILLER CONSTRUCTION, INC., Red Fox, Inc., Harley Miller, Plaintiffs and Appellants,**

v.

**Donald L. RUSSELL and Mid–Am Restaurants, Inc., Defendants and Appellees.**

**Civ. No. 910109.**

Supreme Court of North Dakota.

Feb. 25, 1992.

John J. Gosbee (argued), Gosbee Law Firm, Mandan, for plaintiffs and appellants.

Kelsch, Kelsch, Ruff & Austin, Mandan, for defendants and appellees; argued by William C. Kelsch.

MESCHKE, Justice.

Harley Miller Construction, Inc., Red Fox, Inc., and Harley Miller (collectively identified as Miller) sued Donald L. Russell and Mid–Am Restaurants, Inc. (collectively identified as Mid–Am) to evict Mid–Am from four restaurants owned by Miller and for damages for breach of the leases to Mid–Am. After a series of rulings, the trial court dismissed Miller's action with prejudice, and Miller appealed. Because we conclude that the trial court correctly interpreted a settlement agreement releasing Mid–Am from Miller's claims and that the court's relevant findings are not clearly erroneous, we affirm.

In 1982 Miller leased to Mid–Am three restaurants located in Mandan, Washburn, and Williston. In 1987 Miller also leased to Mid–Am another restaurant in Beulah.

Miller states that "[i]n 1987 things started going sour," and that Mid–Am breached the leases by failing to make required payments for rent, taxes, and maintenance. Mid–Am denied that it breached the leases. Miller and Mid–Am disagreed about the extent, if any, that Mid–Am became the owner of the equipment at the restaurants. Mid–Am eventually filed for protection under Chapter 11 of the Bankruptcy Code.

In November 1988, Miller and Mid–Am executed an extensive Settlement Agreement. Unfortunately, the settlement failed to end the dispute. On April 19, 1989, Miller sued again to evict Mid–Am from all four restaurants, to prohibit Mid–Am from removing equipment from the restaurants, and for money damages for Mid–Am's alleged failure to pay rent, real estate taxes, and "all other charges due under the lease."

On May 19, 1989, in a ruling labeled "Judgment and Order for Eviction," the trial court concluded that the Settlement Agreement superseded the 1982 and 1987

leases. The court construed the Settlement Agreement as releasing Mid–Am from Miller's claims, even though Miller argued that the Settlement Agreement was not a release but only a 60–day option for Miller to purchase restaurant equipment from Mid–Am. The court ruled that, under the Settlement Agreement, Miller could evict Mid–Am with a 30–day notice. Stating that Miller had already given the required notice, the court ordered Mid–Am to vacate the Mandan restaurant by May 26, 1989, and to vacate the other three restaurants by May 31, 1989. The court also ordered that, by those dates, Mid–Am was to "remove all personal property and equipment to which they claim title."

Miller then scheduled a pretrial hearing and asked the court to rule on the question of who owned the restaurant equipment at the four locations and to also rule on seven subsidiary questions. In response, the district court entered a "Pretrial Order" on September 28, 1989. The following excerpts from that ruling by the court help to explain the factual circumstances underlying the questions on this appeal and the district court's conclusions about those questions:

> Miller has urged that the Settlement Agreement constitutes no more than a 60–day option given by Mid Am to allow Miller to re-purchase the equipment Miller sold to Mid Am, along with Mid Am's equipment, in return for an agreement not to evict Mid Am for a 60–day period and that when the 60 days expired, the Agreement ceased to have further force and effect. A reading of the entire Settlement Agreement discloses that it is far more than a mere option. The Agreement sets rentals, addresses payment of past due rents, provides for a dismissal of Mid Am's pending bankruptcy proceedings, provides that the 1982 and Beulah Leases were super[s]eded, creates a new relationship of landlord and tenant, provides for dismissal with prejudice of the then pending eviction action, Morton County Civil # 15503, acknowledges that Mid Am has purchased Miller's restaurant equipment packages at the Mandan, Williston and Washburn

> restaurants, and finally, provides that all damages, disputes, claims, counterclaims or issues between the parties and arising out of all leases and purchase agreements between them are fully settled and compromised.

> There is ample consideration set forth in the Settlement Agreement, and it is not appropriate for the Court to attempt to look into the minds of the contracting parties to judge whether they made a good or bad deal.

> \*   \*   \*   \*   \*   \*

> The 1988 Settlement Agreement has been substantially performed by the parties with both relying upon its terms. Mid Am has paid rent under it, has paid past rents, and has dismissed its bankruptcy proceedings. Miller has accepted rents, has dismissed its earlier eviction action with prejudice, and has sought and obtained an order of eviction based on the Settlement Agreement.

> \*   \*   \*   \*   \*   \*

> By reason of the terms of the 1988 Settlement Agreement, and in response to Miller's seven requests for rulings in this pre-trial hearing, the Court concludes, as a matter of law, that:

> \*   \*   \*   \*   \*   \*

> (C) Mid Am makes no claim of ownership of Miller's equipment in the Beulah restaurant, and, therefore, this is not in issue in this case.

> \*   \*   \*   \*   \*   \*

> (E) The 1988 Settlement Agreement expressly acknowledges that Mid Am is the purchaser of Miller's equipment in the Mandan, Williston, and Washburn restaurants, and all claims that Miller had for any rent or balance of purchase price therefore were expressly forgiven, settled and fully compromised in that Agreement. Mid Am is, therefore, the owners [sic] of the Mandan, Williston, and Washburn restaurant equipment packages free of any claim by Miller.

Because the parties had voluntarily agreed to additional extensions of the leases, the

trial court withdrew its May 19, 1989 eviction order. The court ruled that, if Miller wanted to evict Mid–Am, a new motion would be necessary. The court then gave Miller 15 days to file an amended complaint to raise any claims that it might have against Mid–Am for breaches of the Settlement Agreement or for wrongful conduct after the Settlement Agreement.

Miller filed an amended complaint within the time allowed, alleging that Mid–Am, while vacating the Beulah restaurant, took equipment and fixtures belonging to Miller. Miller asked the court to award money damages for the "conversion" of that property. After a hearing, the trial court entered a final judgment on February 6, 1991, dismissing Miller's complaint with prejudice.

According to Miller's appellate brief, "[t]he main fighting issue on this appeal" is whether the trial court erred in construing the Settlement Agreement. Miller asserts that it was simply a 60–day option for Miller to purchase the restaurant equipment from Mid–Am, and that the Settlement Agreement became void when Miller failed to exercise the option. Miller argues that the parties' claims against each other were not, therefore, released. Miller alternatively asserts that the contract is "at least ambiguous" and that the trial court should have allowed parol evidence about the parties' intent.

■ Whether a contract is ambiguous is a question of law for the court to decide. *Miller v. Schwartz*, 354 N.W.2d 685 (N.D. 1984). A contract is ambiguous when rational arguments can be made for different positions about its meaning. *National Bank of Harvey v. International Harvester*, 421 N.W.2d 799 (N.D.1988). On appeal this court will independently review the contract to determine whether it is ambiguous. *Id.* A contract must be read and construed in its entirety so that the true intent of the parties is determined. *Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120 (N.D.1986). If a contract is unambiguous, extrinsic evidence cannot be used to vary its meaning. *Jorgensen v. Crow*, 466 N.W.2d 120 (N.D.1991). On the questions

presented here, we agree with the trial court that the Settlement Agreement was unambiguous.

■ This Settlement Agreement included much more than a conditional option to purchase equipment. The agreement states:

MILLER agrees:

(A) To release MID AM and Don Russell from any and all liability for:

(1) Future rents that might be due under the leases between the parties that would accrue subsequent to MID AM'S vacation of the various restaurant premises;

(2) Unpaid real estate taxes and special assessments arising out of or owing by reason of the lease of these properties, and MILLER will dismiss, with prejudice, the pending action against Don Russell for taxes and Beulah restaurant rent which is claimed in a Summons and Complaint dated May 22, 1988; and

(3) Any and all other claims against MID AM and Don Russell.

\* \* \* \* \* \*

PART C. OTHER PROVISIONS.

1. Except as otherwise herein specifically provided, all damages, dispute, claims, counterclaims or issues between them and arising out of all leases and purchase agreements between them shall be deemed fully settled and compromised.

The Settlement Agreement expressly compromises and settles all disputed questions between the contracting parties about the restaurant leases, and it releases Mid–Am from all claims that Miller might have against it. The Settlement Agreement contains no conditional language that would make the release of claims against Mid–Am contingent upon Miller's exercise of the option to purchase restaurant equipment. Therefore, we agree with the trial court's interpretation that the agreement is unambiguous and that Miller agreed to release all claims against Mid–Am.

Although not set forth as a separate question on appeal, Miller implies that there was insufficient legal consideration

for the Settlement Agreement to be a valid contract. We disagree.

■ Consideration may be any benefit conferred or detriment suffered, and refraining from doing something which one has a legal right to do is legal detriment that constitutes good consideration. *Matter of Estate of Jorstad*, 447 N.W.2d 283 (N.D.1989); NDCC 9–05–01. The burden of proving lack of consideration is upon the party seeking to invalidate the instrument. NDCC 9–05–11. There is substantial consideration flowing from Mid–Am to Miller for the Settlement Agreement.

■ Mid–Am gave Miller an option to purchase all of its interest in the restaurant equipment for a specified price of $100,000. Mid–Am also agreed that the 1982 and 1987 leases were superseded under the Settlement Agreement, and, thereby, gave up all rights it had under those leases. Mid–Am also agreed to pay approximately $32,000 as past due rents and to continue to pay almost $16,000 per month in rental payments until it vacated the restaurants. In addition, Mid–Am voluntarily withdrew its bankruptcy action. The parties agree that no financing statement was filed to secure the deferred payments for the restaurant equipment, so that, if the bankruptcy had continued, Miller was simply an unsecured creditor. *See* NDCC 41–02–46(1) ("Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."); NDCC 41–09–33. *See also North Dakota Public Service Commission v. Valley Farmers*, 365 N.W.2d 528, 537 (N.D.1985). Consequently, the voluntary withdrawal of the bankruptcy by Mid–Am was a substantial consideration to Miller, who had the right, under the Settlement Agreement, to purchase all of the restaurant equipment for a fixed price. We conclude that, as a matter of law, there was adequate legal consideration for the Settlement Agreement.

Miller argues that, even if the trial court correctly construed the Settlement Agreement, Miller "still had the remnants of a conversion claim—for conversion of property after the 1988 agreement was signed." Miller argues that the trial court should have awarded at least nominal damages for Mid–Am's conversion of some restaurant equipment.

■ Conversion is the wrongful exercise of dominion over another's personal property inconsistent with, or in defiance of, the owner's rights. *Harwood State Bank v. Charon*, 466 N.W.2d 601 (N.D. 1991). A determination by the trial court about whether a conversion has been committed is a finding of fact that will not be overturned on appeal unless it is clearly erroneous. *Harwood*. The trial court made detailed findings about the claim of conversion:

When Mid–Am vacated the [Beulah] premises, it left all of Miller's FF & E [furniture, fixtures, and equipment] except for those items which had broken down or wore out, and except for some expendable items, such as salt and pepper shakers, plates, bowls, and kitchen utensils, which items have a replacement life of approximately two years by reason of breakage and disappearance.

\* \* \* \* \* \*

Though the parties were engaged in ongoing litigation, Miller did not take an inventory of the Beulah FF & E until more than eight months after Mid–Am vacated the premises and delivered possession to Miller. If any of Miller's original FF & E was missing, for reasons other than being worn out (it was over 13 years old), no evidence was presented by Miller to contradict Mid–Am's testimony that it left all of Miller's remaining FF & E in the restaurant building when it vacated the premises. If items were missing, this Court has no evidence upon which to determine what happened to the missing items and no basis to fix responsibility on Mid–Am.

\* \* \* \* \* \*

Upon vacation of the Beulah restaurant, Mid–Am had a lawful right to remove all FF & E that it purchased with its own funds, which FF & E supplemented or replaced worn out or fire damaged equip-

ment of Miller. No contractual commitment existed which required Mid–Am to replace worn out or destroyed FF & E of Miller's.

Miller failed to prove what, if any, of their equipment was missing when Mid–Am vacated the premises, and there is, therefore, no factual basis upon which this Court could find conversion, if in fact any conversion did occur.

We are not left with a firm and definite conviction that the trial court made a mistake in finding that Miller failed to prove conversion. We conclude, therefore, that the trial court's findings are not clearly erroneous.

Miller argues that Mid–Am continued to have equipment "in one or more restaurants" beyond the date the court had originally ordered Mid–Am to vacate the premises, resulting in "an admission that Mid–Am claims no ownership interest in any property not removed by the eviction date or its extensions." Miller cites no authority to support this novel argument. The district court specifically found that Mid–Am did not abandon the property:

Mid Am's failure to vacate any of the restaurants within the time specified in, and under the terms of the May 19, 1989 eviction order, or within such later extended dates as agreed to by the parties, does not amount to either an abandonment of the equipment nor does it amount to a concession that Miller has a claim on the equipment that is superior to Mid Am.

We conclude that this finding is not clearly erroneous.

The judgment dismissing Miller's complaint with prejudice is affirmed.

ERICKSTAD, C.J., VANDE WALLE and LEVINE, JJ., and JAHNKE, District Judge, concur.

JAHNKE, District Judge, sitting due to the resignation of the Honorable H.F. GIERKE III.