2005 ND 68

**Dennis N. STRAND, an individual, on behalf of himself and all others similarly situated, Plaintiff**

v.

**U.S. BANK NATIONAL ASSOCIATION ND, and Does 1 through 10, inclusive, Defendants.**

No. 20040068.

Supreme Court of North Dakota.

March 31, 2005.

Rehearing Denied April 29, 2005.

Brian R. Strange (argued), Strange & Carpenter, Los Angeles, CA, and Dennis E. Johnson (appeared), Johnson & Sundeen, Watford City, N.D., for plaintiff.

James R. McGuire (argued), and Wendy M. Garbers (appeared), Morrison & Foerster, San Francisco, CA, Sarah Andrews Herman (on brief), and Todd Ervin Zimmerman (on brief), Dorsey & Whitney, Fargo, N.D., for defendants.

Jerome C. Kettleson, Pearce & Durick, Bismarck, N.D., Christopher R. Lipsett, Wilmer Cutler Pickering Hale and Dorr, LLP, New York, NY, and Daniel H. Squire and Stephen R. Heifetz, Washington, DC, for amici curiae American Bankers Association and North Dakota Bankers Association; submitted on brief.

KAPSNER, Justice.

[¶ 1] Invoking N.D.R.App.P. 47, the United States District Court for the Central District of California has certified the following questions to this Court:

1) Is a "no class action" provision in an arbitration agreement unconscionable under North Dakota contract law?

2) If yes, is the remainder of the arbitration agreement enforceable?

We conclude that, under the facts presented in the order certifying the questions, the no class action provision in the arbitration agreement is not unconscionable under North Dakota law.

I

[¶ 2] Dennis Strand, a resident of Oregon, was issued a credit card by U.S. Bank, National Association ND ("the Bank"). The credit card agreement states that it is governed by North Dakota law. In October 2001, the agreement between the parties was amended, including addition of a new provision for arbitration of disputes arising from the credit card agreement. That provision states, in pertinent part:

By requesting an Account from us and accepting this Agreement, you agree that if a dispute of any kind arises out of this Agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration....

Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision (individually and collectively, "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbi-

tration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed. . . . There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. . . . This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 through 16.

[¶ 3] In February 2002, Strand brought an action against the Bank, on behalf of himself and all others similarly situated, in the United States District Court for the Central District of California. Strand contends he and other cardholders were wrongly charged excess finance charges and late fees as a result of the Bank's failure to credit payments on the dates they were received. Strand further argues that the "no class action" provision in the credit card agreement is unconscionable, but is severable from the rest of the arbitration provision, and seeks to proceed with arbitration on a class-wide basis. The federal district court has certified to this Court two questions: Whether a "no class action" provision in an arbitration agreement is unconscionable under North Dakota contract law and, if so, whether the remainder of the arbitration agreement is enforceable.

## II

[¶ 4] Unconscionability is a doctrine which allows courts to deny enforcement of a contract because of procedural abuses arising out of the contract's formation and substantive abuses relating to the terms of the contract. *Weber v. Weber*, 1999 ND 11, ¶ 11, 589 N.W.2d 358. This Court has summarized the determination to be made by the trial court in assessing whether contractual provisions are unconscionable:

The court is to look at the contract from the perspective of the time it was entered into, without the benefit of hindsight. The determination to be made is whether, under the circumstances presented in the particular commercial setting, the terms of the agreement are so one-sided as to be unconscionable. The principle underlying the Code's unconscionability provisions is the prevention of oppression and unfair surprise.

*Construction Assocs., Inc. v. Fargo Water Equip. Co.*, 446 N.W.2d 237, 241 (N.D. 1989) (citations omitted).

[¶ 5] The determination whether a particular contractual provision is unconscionable is a question of law for the court. *Knutson v. Knutson*, 2002 ND 29, ¶ 16, 639 N.W.2d 495; *Terry v. Terry*, 2002 ND 2, ¶ 14, 638 N.W.2d 11; *Cook v. Hansen*, 499 N.W.2d 94, 99 (N.D.1993); *Construction Assocs.*, 446 N.W.2d at 241. This Court has recognized, however, that the determination of unconscionability is dependent upon the factual circumstances of the case. *See Knutson*, at ¶ 16; *Terry*, at ¶ 14; *Cook*, at 99. Because the determination of unconscionability is fact specific, courts must "consider such claims on a case-by-case basis," *Forsythe v. BancBoston Mortgage Corp.*, 135 F.3d 1069, 1074 (6th Cir.1997), and assess the totality of the circumstances. 17 C.J.S. *Contracts* ¶ 4 (1999).

[¶ 6] The parties have framed and argued the first certified question as though the determination of unconscionability of a "no class action" clause in an arbitration agreement can be made as a matter of law. Strand argues such clauses will always be unconscionable, and the Bank argues such clauses are authorized by law and would never be unconscionable. Because under North Dakota law the determination of

unconscionability is fact specific, we are unable to say that all "no class action" clauses are unconscionable, or that all such clauses are not unconscionable. Our response to the first certified question in this case is necessarily limited to the factual situation set out in the order of certification and accompanying documents.

A

■ [¶ 7] In assessing unconscionability, the court is to employ "a two-pronged framework: procedural unconscionability, which encompasses factors relating to unfair surprise, oppression, and inequality of bargaining power, and substantive unconscionability, which focuses upon the harshness or one-sidedness of the contractual provision in question." *Construction Associations.*, 446 N.W.2d at 241. Before assessing procedural and substantive unconscionability, we must first address Strand's contention that under North Dakota law a party alleging unconscionability need establish only one of the two prongs, and need not demonstrate both procedural and substantive unconscionability to support a showing that the contractual provision is unenforceable. In support of his argument, Strand relies upon the definition of unconscionability quoted in *Weber*, 1999 ND 11, ¶ 11, 589 N.W.2d 358:

> Unconscionability is a doctrine by which courts may deny enforcement of a contract "because of procedural abuses arising out of the contract formation, or because of substantive abuses relating to terms of the contract." Black's Law Dictionary, 6th Ed., 1524.

Strand claims the use of the disjunctive conjunction "or" indicates that a showing of either procedural or substantive unconscionability will suffice.

[¶ 8] Strand reads too much into the use of the word "or" in the quoted language. There was no issue raised in *Weber* about the necessity of showing both procedural and substantive unconscionability. The language quoted was merely a general description of the doctrine of unconscionability. In *Construction Assocs.*, however, we impliedly held that some measure of both procedural and substantive unconscionability must be shown to allow a court to refuse to enforce the unconscionable provisions. *See Construction Assocs.*, 446 N.W.2d at 242–44 (separately addressing both procedural and substantive unconscionability in affirming the trial court's refusal to enforce certain contract provisions).

[¶ 9] Courts in other jurisdictions have reached varying results on this issue. Some courts hold that a showing of either procedural or substantive unconscionability is sufficient to invalidate a contract. *See Luna v. Household Fin. Corp. III*, 236 F.Supp.2d 1166, 1174 (W.D.Wash.2002). Other courts have held that procedural unconscionability by itself is not enough, but substantive unconscionability by itself may be. *See Maxwell v. Fidelity Fin. Servs., Inc.*, 184 Ariz. 82, 907 P.2d 51, 58–60 (1995); *see also Gillman v. Chase Manhattan Bank, NA*, 73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824, 828–29 (1988) (noting that a "determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made," but recognizing that "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone"). The majority of courts, however, have held that a showing of some measure of both procedural and substantive unconscionability is required, and courts are to employ a balancing test looking at the totality of the circumstances to determine whether a particular provision is uncon-

scionable and unenforceable. *See Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 246 (Wyo.2000) ("most courts require a quantum of both and take a balancing approach in applying them"); 1 James J. White & Robert S. Summers, Uniform Commercial Code § 4–7 (4th ed. 1995) ("Most courts take a "balancing approach" to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural, plus a certain quantum of substantive, unconscionability").

[¶ 10] One leading commentator has summarized:

The concept of unconscionability was meant to counteract two generic forms of abuses: the first of which relates to procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction; and the second of which relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

It has been said that this formulation requires a showing that the contract was both procedurally and substantively un-

conscionable when made. It has often been suggested that a finding of a procedural abuse, inherent in the formation process, must be coupled as well with a substantive abuse, such as an unfair or unreasonably harsh contractual term which benefits the drafting party at the other party's expense. Another way of viewing this problem is that the fact that a contract is one of adhesion does not itself render the contract unconscionable. The distinction between procedural and substantive abuses, however, may become quite blurred; overwhelming bargaining strength or use of fine print or incomprehensible legalese may reflect procedural unfairness in that it takes advantage of or surprises the victim of the clause, yet the terms contained in the resulting contract—whether in fine print or legal "gobbledygook"—would hardly be of concern unless they were substantively harmful to the nondrafting party as well. Thus, the regularity of the bargaining procedure may be of less importance if it results in harsh or unreasonable substantive terms, or substantive unconscionability may be sufficient in itself even though procedural unconscionability is not.

8 Richard A. Lord, *Williston on Contracts* § 18.10 (4th ed.1998) (footnotes omitted).

[¶ 11] The result urged by Strand would lead to absurd consequences. Strand contends a showing of procedural unconscionability alone will suffice to render a contract unenforceable. Because all adhesion contracts will include the most common indicators of procedural unconscionability—disparity of bargaining power, lack of bargaining choice, a preprinted standard form contract, and a "take it or leave it" transaction—all adhesion contracts would be unconscionable and unenforceable. Under Strand's theory, virtual-

ly every consumer transaction would be rendered unenforceable.

■■ [¶ 12] The majority view is in accordance with this Court's conclusion in *Construction Assocs.*, 446 N.W.2d at 244 (citation omitted):

> The concept of unconscionability must necessarily be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case. The circumstances of this case demonstrate elements of procedural and substantive unconscionability which, when viewed in totality, adequately support the trial court's conclusion that the clause limiting remedies and excluding consequential damages was unconscionable under the relevant statutory provisions.

We agree with the majority of courts which have addressed the issue and hold that a party alleging unconscionability must demonstrate some quantum of both procedural and substantive unconscionability, and courts are to balance the various factors, viewed in totality, to determine whether the particular contractual provision is "so one-sided as to be unconscionable." *Construction Assocs.*, 446 N.W.2d at 241.

### B

■ [¶ 13] Procedural unconscionability focuses upon formation of the contract and fairness of the bargaining process, including factors such as inequality of bargaining power, oppression, and unfair surprise. *See Construction Assocs.*, 446 N.W.2d at 241. Courts are more likely to find unconscionability in consumer transactions than in contracts arising in purely commercial settings involving experienced parties. *Id.* at 242. Under North Dakota law, a consumer transaction which is essentially a contract of adhesion will be examined by the courts with special scruti-

ny to assure that it is not applied in an unfair or unconscionable manner against the party who did not participate in its drafting. *Martin v. Allianz Life Ins. Co.*, 1998 ND 8, ¶ 16, 573 N.W.2d 823; *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494, 497 (N.D.1974). An adhesion contract is one drafted by experts in the subject matter of the contract and offered on a "take it or leave it" basis. *Continental Cas. Co. v. Kinsey*, 499 N.W.2d 574, 579 (N.D.1993). In Black's Law Dictionary 342 (8th ed.2004), an "adhesion contract" is defined as:

> A standard-form contract prepared by one party, to be signed by the party in a weaker position, usu. a consumer, who adheres to the contract with little choice about the terms.

■ [¶ 14] The transaction at issue in this case carries the classic hallmarks of procedural unconscionability—inequality of bargaining power, oppression, surprise, lack of negotiation of terms, a preprinted standard form contract, and a "take it or leave it" transaction. There can be little argument that there is an enormous disparity in bargaining power between the Bank and Strand. The transaction produced a pure adhesion contract—the contract was drafted by the Bank, which had superior knowledge of and expertise in credit transactions; it was a preprinted standard form contract, with no possibility of negotiation of its terms; and it was offered to Strand on a "take it or leave it" basis. The contract with the amendments to the parties' credit card agreement, including the new arbitration provision, was sent to Strand as a "bill stuffer" with his monthly billing statement. The cardholder was required to notify the Bank in writing within 25 days if he did not accept the new provisions, and his account would then be closed. The arbitration clause at issue in this case was included on page

fourteen of the sixteen page "bill stuffer" sent with Strand's monthly statement. In *Construction Assocs.*, 446 N.W.2d at 242–43, we concluded that procedural unconscionability had been established, even in a commercial setting, where there was a substantial inequality of bargaining power, a preprinted form contract was used, there was no allowance for bargaining or negotiation of contract provisions, there were elements of unfair surprise, and there was an actual lack of negotiation of contract terms.

 [¶ 15] When one party is in such a superior bargaining position that it totally dictates all terms of the contract and the only option presented to the other party is to take it or leave it, some quantum of procedural unconscionability is established. The party who drafts such a contract of adhesion bears the responsibility of assuring that the provisions of the contract are not so one-sided as to be unconscionable. *See Construction Assocs.*, 446 N.W.2d at 241.

 [¶ 16] The Bank argues there can be no procedural unconscionability in this case because the Bank complied with N.D.C.C. § 51–14–02 when it amended the credit card agreement. Section 51–14–02, N.D.C.C., creates certain requirements when a revolving charge agreement is amended:

> Upon written notice, a seller may change the terms of any revolving charge agreement, including the credit service charge, if this right of amendment has been reserved. A change under this authority is effective as to existing balances, if within twenty-five days of the effective date of the change, the buyer does not furnish written notice to the seller that the buyer does not agree to abide by the changes. Upon receipt of this written notice by the seller, the buyer has the remainder of the time

under the existing terms in which to pay all sums owed to the seller. Any request for additional credit under a revolving charge agreement, including use of a credit card issued under the agreement, after the effective date of the change of terms, including a change in the credit service charge, is deemed to be an acceptance of the new terms, even though the twenty-five days has not expired.

The statute does not specifically authorize wholesale amendment of a credit card agreement by a sixteen-page bill stuffer, nor does it say all amendments to agreements complying with the statutory procedure are necessarily valid and enforceable. The statute merely clarifies that amendment by written notice is allowed, and sets out the procedures for acceptance or rejection which must be abided with or the transaction will be unlawful. The statute does not address unconscionability, nor does it give credit card companies carte blanche to impose upon cardholders whatever terms they desire, regardless of how unfair, one-sided, or oppressive they may be.

[¶ 17] Other courts considering similar arguments, that a finding of procedural unconscionability is precluded if the procedure employed was authorized by a statute, have concluded that the agreements are still subject to unconscionability analysis. *See Shea v. Household Bank (SB), Nat'l Ass'n*, 105 Cal.App.4th 85, 129 Cal. Rptr.2d 387, 390–91 (2003); *Schmaltz v. Nissen*, 431 N.W.2d 657, 662 (S.D.1988). Under the Bank's theory it could use a bill stuffer to make any amendments it desired to the credit card agreement, including adding wholly new provisions which are substantively unconscionable, and although the Bank could not have enforced such provisions had they been included in the original agreement, they would now be

insulated from unconscionability analysis by the statute. We refuse to sanction an interpretation of the statute and our law of unconscionability that would lead to such an absurd result.

[¶ 18] We conclude the transaction in this case was procedurally unconscionable.

## C

[¶ 19] The gravamen of Strand's claim that the "no class action" provision is substantively unconscionable is his assertion that he will be left without an effective remedy for the Bank's alleged wrongful conduct if the clause is enforced. Strand argues that, because his and other cardholders' individual damages are small, it is impractical to bring separate, individual arbitration proceedings for each claim, and no attorney will be willing to litigate such claims.

[¶ 20] Substantive unconscionability focuses upon the harshness or one-sidedness of the contractual provision in question. *Construction Assocs.*, 446 N.W.2d at 241. In *Construction Assocs.*, at 243–44, this Court held that contractual provisions which limited or excluded the substantive remedies otherwise available at law and left the plaintiff without an effective remedy were substantively unconscionable.

[¶ 21] Merely restricting the availability of a class action is not, by itself, a restriction on substantive remedies. The right to bring an action as a class action is purely a procedural right. *Blaz v. Belfer*, 368 F.3d 501, 504–05 (5th Cir.2004); *Johnson v. West Suburban Bank*, 225 F.3d 366, 369 (3d Cir.2000). A class action is not a substantive remedy. *Blaz*, at 505; *Johnson*, at 369. Thus, limitation of use of a class action or class arbitration does not prohibit any substantive remedy that would otherwise be available to Strand. The arbitration agreement between the parties specifically requires that the arbitrator "apply applicable substantive law." All substantive remedies available to Strand in a judicial action, including an award of attorney fees, would be available in arbitration.

[¶ 22] Strand argues that no attorney will be willing to litigate these small claims on an individual basis, and that enforcement of the "no class action" provision would leave him and other cardholders without an effective remedy. Strand points to no empirical evidence that all attorneys would be unwilling to litigate these claims. Strand's attorney filed an affidavit stating that *he* would not accept individual cases involving the amounts at issue here. That is not, however, evidence that *no* attorney would be willing to accept such cases, particularly where attorney fees are available for prevailing plaintiffs. We recognize that, due to the procedural posture of this case, there was a limited record on this issue and no full-blown evidentiary hearing was held. In answering the certified questions, however, we may consider only the facts as stated in the order of certification and accompanying documents.

[¶ 23] Nor has Strand established that he will be left without an effective remedy if the "no class action" provision is enforced. The arbitration provision here requires that the arbitration take place in Strand's home jurisdiction and provides for advancement of fees and costs by the Bank. Furthermore, if Strand prevails in his claim against the Bank he will be entitled to an award of attorney fees. In *Construction Assocs.*, the parties' agreement excluded the weaker party's substantive remedies otherwise available at law, and the "remedy" available under the contract, replacement of the defective product, was "useless" and "amount[ed] to nothing whatsoever." *Construction Assocs.*, 446

N.W.2d at 244. Strand, however, retains all substantive remedies he would otherwise have without the "no class action" provision. Although the unavailability of a class action or class arbitration may make recovery of damages less convenient for the purported class as a whole, under the facts of this case the arbitration provision between Strand and the Bank creates a chance that Strand can be made whole through individual arbitration.

[¶ 24] Unlike the plaintiff in *Construction Assocs.*, the facts certified to us have failed to show that enforcement of the disputed contractual provision would leave Strand without an effective remedy. We therefore conclude Strand has failed to demonstrate that the "no class action" provision is substantively unconscionable.

### D

[¶ 25] Because a showing of both procedural and substantive unconscionability is required to declare a contractual provision unconscionable and unenforceable, we conclude that, under the facts of this case, the "no class action" provision is not unconscionable. The answer to the first certified question is "no."

### III

[¶ 26] The federal district court made resolution of the second certified question, relating to severability of the "no class action" clause, contingent on our resolution of the first question. The second question needed to be answered only if we first determined that the "no class action" provision was unconscionable. Because we have determined the "no class action" provision is not unconscionable, we need not address the second certified question.

[¶ 27] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., BENNY A. GRAFF, S.J., and ROBERT O. WEFALD, D.J., concur.

[¶ 28] The Honorable BENNY A. GRAFF, Surrogate Judge, the Honorable WILLIAM F. HODNY, Surrogate Judge, and the Honorable ROBERT O. WEFALD, D.J., sitting in place of NEUMANN, MARING, and SANDSTROM, JJ., disqualified.