2006-NMCA-018

128 P.3d 496

Daniel HERNANDEZ, on behalf of himself and all other similarly situated account holders at Defendant bank, Plaintiff–Appellant,

v.

WELLS FARGO BANK NEW MEXICO, N.A., a national bank doing business in New Mexico, Defendant–Appellee.

No. 24662.

Court of Appeals of New Mexico.

Dec. 8, 2005.

The Bregman Law Firm, P.C., Sam Bregman, Eric Loman, Albuquerque, for Appellant.

Keleher & McLeod, P.A., W. Spencer Reid, Gary J. Van Luchene, Albuquerque, for Appellee.

## OPINION

WECHSLER, J.

{1} Daniel Hernandez (Plaintiff) appeals from the trial court's order granting summary judgment in favor of Wells Fargo Bank New Mexico (Bank). Plaintiff argues that Bank's charging of overdraft fees violates the New Mexico Unfair Practices Act (UPA), NMSA 1978, § 57–12–2(E)(2) (2003). We hold that summary judgment was proper because Plaintiff failed to meet his burden to rebut Bank's prima facie evidence that the overdraft fee was not grossly disproportionate to the value received by Plaintiff and affirm.

## FACTS AND PROCEDURAL BACKGROUND

{2} Plaintiff maintains a checking account with Bank, a nationally chartered bank. Plaintiff occasionally used a debit card to make purchases that are charged against his account. On more than one occasion, Plaintiff used his debit card for a purchase transaction when his checking account did not have sufficient funds. On such occasions, Bank approved the transaction, covered the difference, and charged Plaintiff an overdraft fee between $28 and $31. Most of the overdrafts were in amounts less than the overdraft fee. Plaintiff sued Bank under Section 57–12–2(E)(2), alleging that Bank's overdraft fees are extensions of credit that are unconscionable because of a gross disparity between the value received (Bank coverage of the overdrafts) and the price paid (the resultant overdraft fee).

{3} Bank moved for summary judgment, arguing that Plaintiff's UPA claim is preempted by the National Banking Act, 12 U.S.C. §§ 21–216 (2000) (NBA), and that the overdraft fees are not unconscionable as a matter of law. Bank's motion for summary judgment included an affidavit of Bank Vice President Victor A. Valdez and supporting documentation of a 1997 Account Agreement and a 1999 Account Agreement (Account

Agreements). The Account Agreements set forth Bank's rights to cover or to decline transactions, including electronic transactions when presented on insufficient funds, and to charge Plaintiff a resultant fee. Valdez's affidavit also referred to and attached a 2000 Consumer Account Fee and Information Schedule, which provided Plaintiff with information on available overdraft protection plans and overdraft fees. Plaintiff signed account applications in which he acknowledged having received and being bound by the Account Agreements and the Consumer Account Fee. In addition, Valdez's affidavit referred to attached bank statements in which Bank gave Plaintiff notice of his overdrafts, provided the amounts of the overdraft fees that Plaintiff agreed to pay, notified Plaintiff that it was Bank's policy to approve as many debit card transactions as possible, and offered Plaintiff the option to apply for overdraft protection.

{4} In response to Bank's motion for summary judgment, Plaintiff disputed receiving all of the above-noted documentation, disputed the reasonableness and justification for Bank's overdraft policies, and argued that preemption did not apply. The trial court granted summary judgment in Bank's favor, determining that there was no genuine issue of material fact with respect to Bank's statement of material facts, and that (1) federal law preempted Plaintiff's claim, and (2) as a matter of law, Bank was otherwise entitled to summary judgment.

## STANDARD OF REVIEW

{5} Summary judgment is properly granted when no genuine issues of material fact exist "and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. We review de novo the issue of whether the movant was entitled to judgment as a matter of law. *Id.* The movant must make a prima facie showing that summary judgment is merited. *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). Upon such a prima facie showing, the burden shifts to the party opposing summary judgment to show specific evidentiary facts in the form of admissible evidence that require a trial on the merits. *Id.* at

334–35, 825 P.2d at 1244–45; *Ciup v. Chevron U.S.A., Inc.*, 1996–NMSC–062, ¶ 7, 122 N.M. 537, 928 P.2d 263. General assertions of the existence of a triable issue are insufficient. *See Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 803, 780 P.2d 627, 629 (1989) ("[M]ere argument or bare contentions of the existence of a material issue of fact is insufficient."); *Spears v. Canon de Carnue Land Grant*, 80 N.M. 766, 769, 461 P.2d 415, 418 (1969) ("Mere argument or contention of existence of material issue of fact … does not make it so. The party opposing a motion for summary judgment cannot defeat the motion … by the bare contention that an issue of fact exists, but must show that evidence is available ….") (citation omitted); *Schmidt v. St. Joseph's Hosp.*, 105 N.M. 681, 683, 736 P.2d 135, 137 (Ct.App.1987) (stating that "a general allegation without an attempt to show the existence of those factual elements comprising the claim or defense" is insufficient to overcome a motion for summary judgment) (internal quotation marks and citation omitted).

## PLAINTIFF'S FAILURE TO MEET HIS BURDEN

{6} Section 57–12–2(E)(1), (2) defines an "unconscionable trade practice" as:

[A]n act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and the price paid.

{7} Plaintiff premises his claim on Bank's alleged violation of Section 57–12–2(E)(2), arguing specifically that Bank made an extension of credit that was unconscionable because it resulted in a gross disparity between the value received and the price paid. Plaintiff claims that the overdraft fees are excessive for the services rendered and that the

**70**

amount of the overdraft fees and the actual expenses incurred by Bank for processing Plaintiff's overdrawn debit transactions do not justify the amount of the fees imposed.

■ {8} As a national bank, Bank is subject to the NBA and regulations of the Office of the Comptroller of the Currency (OCC) under its authority to supervise and regulate federally chartered banks pursuant to the NBA. *See* 12 U.S.C. § 1 (2000). In connection with its motion for summary judgment, Bank presented evidence that it established its overdraft fees in accordance with sound banking principles under the OCC regulation pertaining to a national bank's adoption of customer fees. Specifically, Bank submitted Valdez's affidavit stating that the fees aid in offsetting Bank's costs in processing the overdrafts. Valdez stated that Bank's costs included resultant "postage and mailing costs, costs associated with time spent by [b]ank tellers or customer service representatives with account holders whose accounts are overdrawn, and, in some cases, costs related to collection activities to recover overdrawn amounts or write-offs of overdrawn amounts." Valdez indicated that the amount of the fees is designed, in part, to deter Bank customers from repeatedly overdrawing their accounts and to encourage them to keep track of their account balances. Additionally, Valdez stated that the amount of overdraft fees must remain competitive with that of other large banks to discourage customers who habitually overdraw their accounts from choosing Bank. He further stated that, as part of Bank's business plan and marketing strategy, Bank chooses to approve as many transactions as possible, both to provide a better experience for most customers "by avoiding public rejection in the grocery line," and to make the debit card more reliable for merchants. Lastly, Valdez stated that the overdraft fees contribute to its income and are at amounts that are competitive with other banking institutions, adding to the safety and soundness of banking practices. Putting aside any issue of whether Bank's actions complied with OCC regulation, Valdez's affidavit meets the requirements of a prima facie showing that there is no gross disparity between the value received by Plaintiff and the fee he paid for that value. *See Rivera v. Brazos Lodge*

*Corp.*, 111 N.M. 670, 672, 808 P.2d 955, 957 (1991) ("A prima facie showing contemplates such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted. The movant need not demonstrate beyond all possibility that no genuine factual issue existed.") (citation omitted); *Oschwald v. Christie*, 95 N.M. 251, 253, 620 P.2d 1276, 1278 (1980) (discussing prima facie cases for summary judgment and concluding that the affidavit of the movant did make a prima facie case).

{9} In response to Bank's motion for summary judgment, Plaintiff argued that the overdraft fees were unconscionable as a matter of fact, unreasonable, and grossly higher than Bank's costs. He further argued that Bank's interests in deterrence of customer abuse and protection of its market position could best be accomplished by denying overdraft transactions or charging a reasonable fee. Plaintiff submitted his own affidavit in which he denied receiving both the 1997 Account Agreement and the Fee and Information Schedule. He also denied that his actions were the cause of the overdrafts. He further stated:

4. I do not believe that deterring overdrafts is the reason that Wells Fargo charges high overdraft fees.

5. I do not prefer to pay an extremely high overdraft fee than to have a transaction publicly denied. I also believe that many bank customers feel the same way I do.

6. I do not believe that Wells Fargo charges high overdraft fees in order to deter those who overdraft their accounts from banking with Wells Fargo. I believe that they could achieve this same goal by not approving overdrafts.

. . . .

8. I believe that the overdraft fees charged by Wells Fargo are grossly unfair.

{10} The shortcoming of Plaintiff's response is that it does not counter Bank's motion and affidavit in a manner to place material facts at issue. Plaintiff makes only general statements expressing his contrary beliefs and arguments without rebutting Bank's evidence that its overdraft fees were not disproportionate. *See Martinez v. Metzgar*, 97 N.M. 173, 175, 637 P.2d 1228, 1230 (1981) ("Belief or opinion testimony alone, no

matter how sincere it may be, is not equivalent to personal knowledge. . . . Therefore, these statements do not create a genuine issue of material fact which would preclude summary judgment . . . .") (citation omitted); *Pedigo v. Valley Mobile Homes, Inc.*, 97 N.M. 795, 798, 643 P.2d 1247, 1250 (Ct.App. 1982) (noting that "factually unsupported opinion testimony" is "not sufficient to defeat a motion for summary judgment"). Regardless of whether Bank could have addressed overdrafts differently, the Valdez affidavit states that Bank approved the transactions based, in part, on concerns with public embarrassment for its customers. In establishing its fees, Bank considered more than its actual cost in providing the service in order to address deterrence, its competitive position, and the maintenance of its safety and soundness as a banking institution. Plaintiff's beliefs are not relevant except as to the value he received in a transaction. *See* § 57–12–2(E)(2); *see also Martinez*, 97 N.M. at 175, 637 P.2d at 1230; *Pedigo*, 97 N.M. at 798, 643 P.2d at 1250. His only statement in this regard is that he would prefer to be publicly denied approval than charged an overdraft fee. This statement, however, is only a general attack on the value he received. As with Plaintiff's other statements, it does not raise an evidentiary issue that there was a gross disparity between the overdraft fee and the benefit received. *See Bixby v. Reynolds Mining Corp.*, 113 N.M. 372, 374, 826 P.2d 968, 970 (1992) ("Conclusions that are stated in an affidavit, unsupported by any factual basis . . . are not sufficient to raise issues of material fact. The opposing party must set forth more than mere argument.") (citation omitted); *Clough*, 108 N.M. at 803, 780 P.2d at 629; *Spears*, 80 N.M. at 769, 461 P.2d at 418; *Schmidt*, 105 N.M. at 683, 736 P.2d at 137.

{11} Plaintiff's argument in his response also does not directly address the issue of the disproportionate relationship of the overdraft fee to the value Plaintiff received. It is not enough to make the general statement that a reasonable jury could find in his favor. Plaintiff stresses the amount of his overdrafts in relation to the overdraft fee. However, the amount of the overdraft is not the focus of the overdraft fee. As contemplated by the Account Agreements, the overdraft fees are fees for the processing of Plaintiff's debit transactions made on insufficient funds. They are not interest or compensation for the use of money, transactions for which there is a direct relationship between the amount extended and the amount charged. *See Video Trax, Inc. v. NationsBank, N.A.*, 33 F.Supp.2d 1041, 1050 (S.D.Fla.1998) (holding that overdraft and not sufficient fund (NSF) fees, charged to compensate the bank for processing bad checks, are not imposed in connection with an extension of credit involving interest within the meaning of 12 U.S.C. § 85 and 12 C.F.R. § 7.4001(a) (1997), but arise from the terms of the deposit agreements); *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex.1994) (holding that a bank's fees for checks drawn on an account with insufficient funds do not constitute interest because the fees "are an additional charge supported by a distinctly separate and additional consideration, [for processing the overdrafts,] other than the simple lending of money").

{12} Although Plaintiff argues in his reply brief that there is a distinction between an overdraft check and an overdraft debit transaction, for the purposes of this opinion, we do not agree. When Plaintiff used his debit card beyond the cash balance that was in his checking account, Bank charged an overdraft fee for each item paid beyond the balance in Plaintiff's account. Plaintiff's use of the debit card was comparable to writing a check. *See Gale v. Hyde Park Bank*, 384 F.3d 451, 452 (7th Cir.2004) (recognizing that like a checking account, use of a debit card requires that the bank balance supports each new transaction regardless of whether the transaction is immediately posted).

## CONCLUSION

{13} We affirm the trial court's grant of summary judgment on the merits of Plaintiff's unconscionability claim because Plaintiff did not meet his burden in responding to Bank's motion and affidavit.

{14} **IT IS SO ORDERED.**

SUTIN and CASTILLO, JJ., concur.