2010 ND 183

QUALITY BANK, Plaintiff and Appellee

and

Timothy Cavett, Plaintiff

v.

Lynette CAVETT, a/k/a Lynnette Cavett, Defendant and Appellant.

No. 20100024.

Supreme Court of North Dakota.

Sept. 21, 2010.

Peter W. Zuger (argued) and Brad A. Sinclair (appeared), Fargo, ND, for plaintiff and appellee.

Rudra Tamm (argued), Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Lynette Cavett, a/k/a Lynnette Cavett, appeals a district court's summary judgment dismissing her counterclaim against Quality Bank. We hold the district court correctly concluded on this record that Quality Bank was entitled to judgment as a matter of law and affirm the summary judgment.

I.

[¶ 2] Cavett opened a checking account at Quality Bank in October 2003 and used the account as part of her hog raising operation. Upon opening the account, Quality Bank provided Cavett with a document entitled "Important Account Information for Our Customers." The document stated: "If an item is presented [to Quality Bank] without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (NSF). The amount of the overdraft and NSF fees are disclosed elsewhere." From October 2003 through April 2004, Cavett incurred numerous overdraft charges and fees on her checking account, ranging from $5 to $25. The record does not include Quality Bank's overdraft fee schedule during this period.

[¶ 3] Effective May 1, 2004, Quality Bank instituted a new schedule for overdraft fees. Quality Bank mailed a "Fees and Service Charges" brochure to clients explaining the new schedule. The brochure indicated Quality Bank would charge two different overdraft fees. First, the brochure stated Quality Bank would charge clients a fee on "*each day* that an overdraft balance remains on your account. . . ." The amount of the daily overdraft fee escalated with the amount of the

overdraft balance. For example, when a client's account was overdrawn by $1 to $50, Quality Bank charged the client's account $4 per day; when a client's account was overdrawn by more than $10,000, Quality Bank charged the account $100 per day. Quality Bank charged the daily overdraft fee whether or not the client utilized the overdrawn account on that day. In addition, the brochure stated Quality Bank would charge $10 "for each statement cycle that the account balance is below zero...." After Quality Bank enacted its new overdraft fee schedule, Cavett continued to incur substantial overdraft fees over the next four years. During this period, Cavett frequently overdrew her account and occasionally repaid the full amount of the outstanding overdraft.

[¶ 4] In November 2008, Quality Bank filed a complaint against Cavett. In relevant part, the complaint alleged Cavett owed $78,457.63 to Quality Bank for outstanding overdrafts of her checking account, as well as the corresponding overdraft fees. Cavett filed an answer and counterclaim, alleging Quality Bank charged unconscionably large overdraft fees and requesting the district court award her damages equal to the amount of the overdraft fees. Quality Bank filed a motion for summary judgment on Cavett's counterclaim in July 2009. Quality Bank claimed it was entitled to summary judgment because state law permits a bank to honor a customer's check even if the check creates an overdraft, and Cavett was placed on notice about the overdraft fees when Quality Bank mailed her both the brochure explaining its fee schedule and the subsequent bank statements showing the fees. Quality Bank also claimed its overdraft fees are commercially reasonable and not unconscionably large.

[¶ 5] The district court agreed with Quality Bank's arguments, concluded the checking account agreement was not unconscionable, and granted summary judgment to the bank. Because Quality Bank mailed Cavett the brochure explaining the overdraft fee schedule, notices for each overdraft, and bank statements showing the overdrafts and corresponding fees, the district court found: "Cavett was on notice that she would be charged overdraft fees if she wrote checks that overdrew her account." The district court rejected Cavett's claim that Quality Bank's overdraft fee schedule was substantively unconscionable, stating "[t]he overdraft charges clearly are used for administrative fees and to ensure the safety and soundness of the institution. It is unrealistic to expect a bank to operate without some sort of ability to profit from the transactions and service fees." The district court also noted: "Cavett had the opportunity to keep her checking account with the bank and use it without writing checks that would overdraw her account and by keeping a positive balance." Therefore, the district court granted summary judgment to Quality Bank and dismissed Cavett's counterclaim. Cavett now appeals.

II.

[¶ 6] In *Farmers Union Mut. Ins. Co. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 2007 ND 135, ¶ 7, 737 N.W.2d 253, this Court explained its review of a district court's decision to grant summary judgment:

The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Hasper v. Center Mut. Ins. Co.*, 2006 ND 220, ¶ 5, 723 N.W.2d 409. In deciding whether the district court appropriately granted summary judgment, this Court views the evidence in the light most favorable to the party opposing the

motion, and the opposing party will be given the benefit of all favorable inferences that can reasonably be drawn from the record. *Id.* On appeal, we decide "whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law." *Id.* Whether the district court properly granted summary judgment is a question of law that we review de novo on the entire record. *Ernst v. Acuity,* 2005 ND 179, ¶ 7, 704 N.W.2d 869.

Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of her claim for which she will bear the burden of proof at trial. *Black v. Abex Corp.,* 1999 ND 236, ¶ 23, 603 N.W.2d 182 (citing *Strom–Sell v. Council for Concerned Citizens, Inc.,* 1999 ND 132, ¶ 16, 597 N.W.2d 414).

[¶ 7] Cavett does not dispute the factual record in this action. Rather, Cavett argues Quality Bank was not entitled to summary judgment because, based upon the record, its overdraft fee schedule is unconscionable as a matter of law. "Unconscionability is a doctrine which allows courts to deny enforcement of a contract because of procedural abuses arising out of the contract's formation and substantive abuses relating to the terms of the contract." *Strand v. U.S. Bank Nat'l Ass'n ND,* 2005 ND 68, ¶ 4, 693 N.W.2d 918 (citing *Weber v. Weber,* 1999 ND 11, ¶ 11, 589 N.W.2d 358). When determining whether a particular contract is unconscionable, courts must "look at the contract from the perspective of the time it was entered into, without the benefit of hindsight." *Constr. Assocs., Inc. v. Fargo Water Equip. Co.,* 446 N.W.2d 237, 241 (N.D.1989). To determine whether a contract is unconscionable, courts utilize "a

two-pronged framework: procedural unconscionability, which encompasses factors relating to unfair surprise, oppression, and inequality of bargaining power, and substantive unconscionability, which focuses upon the harshness or one-sidedness of the contractual provision in question." *Id.* Whether a contract is unconscionable is a question of law for the court to decide and depends upon the factual circumstances of each case. *Strand,* at ¶ 5. Thus, "[a]lthough the question of unconscionability is one of law, factual findings are necessary for the determination." *Weber,* at ¶ 8.

[¶ 8] Cavett claims her checking account agreement with Quality Bank qualifies as an adhesion contract and is therefore presumptively procedurally unconscionable. "An adhesion contract is one drafted by experts in the subject matter of the contract and offered on a 'take it or leave it' basis." *Strand,* 2005 ND 68, ¶ 13, 693 N.W.2d 918 (citing *Cont'l Cas. Co. v. Kinsey,* 499 N.W.2d 574, 579 (N.D. 1993)). Courts presume adhesion contracts are procedurally unconscionable. *See Strand,* at ¶ 13 (stating the party who drafts an adhesion contract must prove "the provisions of the contract are not so one-sided as to be unconscionable").

[¶ 9] The district court found the checking account agreement was not an adhesion contract or procedurally unconscionable. The district court concluded the checking account agreement was not a "take it or leave it" contract because "Cavett had the opportunity to keep her checking account with the bank and use it without writing checks that would overdraw her account and by keeping a positive balance." The district court also stated "Cavett was on notice that she would be charged overdraft fees if she wrote checks that overdrew her account" because Quality Bank mailed her both the overdraft fee

schedule and notices each time the bank honored a check that created an overdraft.

[¶ 10] We hold the district court did not err by concluding the checking account agreement was not an adhesion contract or procedurally unconscionable based upon the record before the court. The record is devoid of evidence regarding the formation of the agreement, unfair surprise, inequality of bargaining power, or oppression. Without such evidence, Cavett failed to establish a genuine issue regarding procedural unconscionability.

■■■ [¶ 11] In addition, Cavett argues the district court erroneously granted summary judgment because the checking account agreement is substantively unconscionable. Cavett claims the agreement permits Quality Bank to charge recurring overdraft charges and fees that, when compared to the size of the overdraft balance, constitute unconscionably large interest rates. The district court held Quality Bank's overdraft fees were not interest, but rather "administrative fees ... to ensure the safety and soundness of the institution." The district court also concluded the fees were not unconscionably large, stating: "It is unrealistic to expect a bank to operate without some sort of ability to profit from the transactions and service fees."

[¶ 12] Section 47–14–04, N.D.C.C., defines "interest" as "compensation allowed for the use, or forbearance, or detention of money, or its equivalent." Cavett argues this Court should regard Quality Bank's overdraft fees as "interest" under N.D.C.C. § 47–14–04 because the fees compensated the bank for allowing her to use its money when she overdrew her checking account. *See Thiele v. Security State Bank of New Salem,* 396 N.W.2d 295, 298 (N.D.1986) ("When a bank honors a customer's overdraft, it makes an unsecured loan to that customer...."). Be-

cause determining whether Quality Bank's overdraft fees constitute "interest" under N.D.C.C. § 47–14–04 is not necessary to our disposition of this case, we decline to decide the issue.

[¶ 13] However, we note that, when examining the issue under federal law, courts have resoundingly rejected the argument that overdraft fees are the equivalent of interest. *See Soto v. Bank of Lancaster County,* 2010 WL 1257666, *1–2 (E.D.Pa. 2010); *In re Washington Mutual Overdraft Protection Litig.,* 2004 WL 5046210, *5 (C.D.Cal.2004), *aff'd in part, rev'd in part on other grounds,* 201 Fed.Appx. 409 (9th Cir.2006); *Nicolas v. Deposit Guar. Nat'l Bank,* 182 F.R.D. 226, 231 (S.D.Miss. 1998); *Video Trax, Inc. v. NationsBank, N.A.,* 33 F.Supp.2d 1041, 1050 (S.D.Fla. 1998), *aff'd per curiam,* 205 F.3d 1358 (11th Cir.2000); *Terrell v. Hancock Bank,* 7 F.Supp.2d 812, 816 (S.D.Miss.1998). Several state courts have reached the same conclusion under state law. *See Hernandez v. Wells Fargo Bank New Mexico, N.A.,* 139 N.M. 68, 128 P.3d 496, 499 (2005) ("As contemplated by the Account Agreements, the overdraft fees are fees for the processing of [bank customer's] debit transactions made on insufficient funds. They are not interest or compensation for the use of money...."); *First Bank v. Tony's Tortilla Factory, Inc.,* 877 S.W.2d 285, 288 (Tex.1994) ("[W]e hold that, as a matter of law, the NSF fees charged in this case were not interest.").

■■■ [¶ 14] We hold the district court did not err by concluding the checking account agreement was not substantively unconscionable because Cavett failed to produce sufficient evidence to demonstrate the overdraft fees charged by Quality Bank are unconscionably large. "Substantive unconscionability focuses upon the harshness or one-sidedness of the contractual provision in question." *Strand,* 2005

ND 68, ¶ 20, 693 N.W.2d 918 (citing *Constr. Assocs.*, 446 N.W.2d at 241). "Substantive unconscionability concerns the question whether the terms themselves are commercially reasonable." *Constr. Assocs.*, at 243 (quotation omitted).

[¶ 15] Cavett produced no evidence in response to Quality Bank's motion for summary judgment. Rather, Cavett claimed the evidence Quality Bank submitted in support of its motion, specifically the bank's overdraft fee schedule and Cavett's monthly account statements, proved her claims regarding substantive unconscionability. Cavett was permitted to rely upon Quality Bank's evidence to support her argument against summary judgment. *See Luithle v. Taverna*, 214 N.W.2d 117, 124 (N.D.1973) (stating the failure to submit evidence "does not authorize the entry of summary judgment against [the non-moving party] when the proof submitted in support of the motion by the moving party indicates the presence of a genuine issue of material fact"). Nevertheless, because the evidence submitted by Quality Bank does not demonstrate substantive unconscionability, Cavett's reliance on such evidence means that she failed to establish a genuine issue of fact for which she would bear the burden of proof at trial. Due to Cavett's failure, we must affirm the summary judgment. *Black*, 1999 ND 236, ¶ 23, 603 N.W.2d 182 ("Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of her claim and on which she will bear the burden of proof at trial.").

[¶ 16] Quality Bank's overdraft fee schedule provides for two types of overdraft fees and charges. Quality Bank charges a daily overdraft fee that escalates according to the size of the overdraft. For each day a customer has an overdraft balance of $1 to $50, Quality Bank charges

the customer's account $4; for overdraft balances over $10,000, the bank charges a $100 daily fee. Quality Bank also charged $10 for each statement cycle the account balance remains overdrawn. Examining Quality Bank's fee structure, the evidence does not establish substantive unconscionability. The fees were based on ranges of overdrafts so bank customers would know the "cost" of overdrawing their account. While the fees increased as the overdraft became larger, the "cost" in relation to the amount of the overdraft became smaller, and customers were aware of such fact before they incurred overdraft fees.

[¶ 17] In addition to Quality Bank's overdraft fee schedule, the record also contains Cavett's bank statements, which show she repeatedly overdrew her checking account and incurred substantial overdraft fees. For example, from November 23, 2005 to September 1, 2006, Cavett's account was overdrawn by more than $10,000, and Quality Bank charged her $100 per day during this period as a result. When Quality Bank filed its complaint against Cavett on November 21, 2008, the bank statements indicated Cavett's account was overdrawn by more than $75,000 and had been overdrawn since May 27, 2008.

[¶ 18] However, beyond Quality Bank's overdraft fee schedule and Cavett's monthly bank statements, the record contains no further evidence to support Cavett's claim regarding substantive unconscionability. Cavett did not submit a demonstrative exhibit totaling the overdraft fees Quality Bank actually charged her account. She did not submit an affidavit regarding the "harshness" of the overdraft fees. *See Strand*, 2005 ND 68, ¶ 20, 693 N.W.2d 918 (stating substantive unconscionability concerns the "harshness" of contractual terms). Cavett did not submit evidence by which the district court could compare

Quality Bank's overdraft fee schedule to other banks to determine whether Quality Bank's schedule is commercially reasonable. *See Constr. Assocs.*, 446 N.W.2d at 243 ("Substantive unconscionability concerns the question whether the terms themselves are commercially reasonable.") (quotation omitted). Cavett also did not submit expert evidence, either through affidavit or testimony, explaining how Quality Bank's overdraft fee schedule was substantively unconscionable as applied to her. Cavett has not demonstrated any statutory violations in the bank's assessment of overdraft fees.

[¶ 19] Cavett simply asked the district court to look at Quality Bank's overdraft fee schedule, review her bank statements, and conclude the checking account agreement was unconscionable. The district court did not err by concluding this evidence alone does not prove the agreement was "take it or leave it" or that Cavett was unfairly surprised by the contents of the agreement. Nor did the district court err by concluding this evidence alone does not demonstrate the harshness or one-sidedness of the overdraft fee schedule, or whether the fee schedule was commercially reasonable. Therefore, we hold the district court correctly concluded Quality Bank was entitled to judgment as a matter of law because Cavett failed to establish a genuine issue regarding whether the checking account agreement was procedurally or substantively unconscionable.

## III.

[¶ 20] We conclude the other issues raised by the parties are unnecessary to resolve our disposition of the case. We hold the district court correctly concluded Quality Bank was entitled to judgment as a matter of law and affirm the summary judgment.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.